**Kenneth Ray MEADE, Plaintiff-Appellant,**

v.

**GRUBBS, Badge No. 128, individually and as a deputy sheriff of the County of Oklahoma, et al., Defendants-Appellees.**

**No. 84–2631.**

United States Court of Appeals, Tenth Circuit.

March 11, 1988.

---

1514

Michael Gassaway of Hughes, Nelson & Gassaway, Oklahoma City, Okl. (John B. Monnet, was also on the brief), for plaintiff-appellant.

Charles S. Rogers, Asst. Dist. Atty., Oklahoma City, Okl. (Robert H. Macy, Dist. Atty., Oklahoma City, Okl., was also on the brief) for defendants-appellees Grubbs, Sharp, Buchanan, Darrell, Snyder, and Bd. of Com'rs of Oklahoma County.

Linda L. Gray, Asst. Atty. Gen., Oklahoma City, Okl. (Michael C. Turpen, Atty. Gen. of Oklahoma, was also on the brief), for defendants-appellees Henslee, Reed, Coffelt, McBride, Mueller, Rayburn, Leavitt, and Turpen.

Frederic B. Aurin, Jr., Dept. of Human Services, Oklahoma City, Okl. (Charles Lee Waters, General Counsel and Richard W. Freeman, Jr., Asst. General Counsel, Dept. of Human Services, were on the brief), for defendant-appellee Robert Fulton.

Before HOLLOWAY, Chief Judge, BARRETT, Circuit Judge, and SAM, District Judge [*]

HOLLOWAY, Chief Judge.

Plaintiff Meade filed a *pro se* complaint on July 3, 1984 alleging physical violence and denial of medical care by three Oklahoma County sheriffs, and emotional distress. The complaint also named several Oklahoma state and county officials as defendants. Meade amended his complaint twice, changing allegations and eliminating and adding defendants. In his Second Amended Complaint Meade invoked 42 U.S.C. §§ 1983 and 1988 (1982) and the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, and named as defendants in their individual and official capacities: (1) Deputy Grubbs, John Doe # 1, John Doe # 2, etc., deputy sheriffs of Oklahoma County; (2) J.D. Sharp, the Sheriff of Oklahoma County; (3) F.G. "Buck" Buchanan, Shirley Darrell and Fred Snyder, County Commissioners of Oklahoma County; (4) Bill Henslee, Carl W. Reed, Jr., Norman Coffelt, David McBride, Richard Mueller and K.O. Rayburn, members and officers of the Oklahoma Council on Law Enforcement Education and Training; (5) Robert Fulton, Director of the Oklahoma Department of Human Services; (6) Joan Leavitt, M.D., the Commissioner of the Oklahoma Department of Health; and (7) Michael C. Turpen, Attorney General of Oklahoma.

Between August 31 and September 24, 1984, the defendants filed a series of motions under Fed.R.Civ.P. 12(b)(6) to dismiss the Second Amended Complaint for failure to state a claim on which relief can be granted. On October 4 Michael Gassaway

---

[*] The Honorable David Sam, United States District Judge for the District of Utah, sitting by designation.

filed an entry of appearance as attorney for Meade. That day Gassaway also filed an Application for Extension of Time until October 15 to respond to the defendants' motions to dismiss. Gassaway stated that he had been recently hired by Meade and the time was necessary to permit him to properly respond to the motions.[1]

On October 10, 1984, the district judge denied Gassaway's Application for Extension of Time on the ground that the application failed to comply with Local Rule 14(H).[2] I R. 71. Two days later the judge *sua sponte* set a hearing for October 18 on the defendants' motions to dismiss. After the hearing the judge dismissed with prejudice Meade's action against all of the named defendants in their individual and official capacities on two grounds: (1) the complaint failed to state a claim, and (2) Meade had not filed a response to the motions to dismiss in accordance with Local Rule 14(A).[3] I R. 77. We affirm in part, reverse in part, and remand.

## I. THE FACTUAL BACKGROUND

The facts as alleged in plaintiff Meade's *pro se* Second Amended Complaint are as follows:

At approximately 5:00 p.m. on March 25, 1983, Meade was arrested by two Warr Acres police officers and placed in custody in the Warr Acres municipal jail. While there Meade requested medical attention, indicating to the two arresting officers that he was experiencing severe, sharp pains in

his chest, and feeling faint and unable to breathe. The officers responded that he could see a doctor when he arrived at the Oklahoma County jail.

About 7:00 p.m. that evening, Meade was taken to the eleventh floor of the Oklahoma County jail. When Meade arrived at the booking area, he began to feel faint again and bent down so that he would not pass out. Grubbs, a deputy sheriff of Oklahoma County, approached Meade and allegedly "without cause or justification, deliberately kicked plaintiff's left thigh and told plaintiff to get up, to which plaintiff responded that he was feeling faint and, in reply, Defendant GRUBBS grabbed and twisted plaintiff's fingers in a violent manner to force him to rise." I R. 36. Grubbs then placed Meade in custody. In doing so Grubbs purportedly used excessive and unjustified force, slamming Meade's head into barred walls, dragging him by the hair of his head, choking him and twisting his arm, applying a marker against his neck, and beating and kicking him on the side, face, head, legs and stomach.

Other deputy sheriffs of Oklahoma County—identified in Meade's complaint as "John Doe # 1, John Doe # 2, etc."—allegedly acquiesced in the beating by failing to stop Grubbs and assisted Grubbs by holding Meade's head in an armlock to allow other deputies to beat him, violently applying their knuckles into Meade's temple, and beating and kicking Meade in the side, face, head, legs, groin and stomach. The depu-

---

1. On October 4, 1984, the date on which Gassaway entered an appearance as Meade's attorney, the time in which to respond to motions to dismiss by Fulton, Leavitt, Turpen, the Council for Law Enforcement, Education and Training, Henslee, Reed, Coffelt, McBride, Mueller and Rayburn had already passed. *See* Rules of the United States District Court for the Western District of Oklahoma 14(A) (1982). However, Gassaway had five days—until October 9—in which to respond to the motion to dismiss filed on behalf of Grubbs, Sharp, Buchanan, Darrell, Snyder and the County Commissioners of Oklahoma County.

2. Local Rule 14(H) requires an Application for Extension of Time to include:
 (1) the date the act is due to occur without the requested extension; (2) whether previous applications for extension have been made to

include the number, length of extension, or other disposition of them; and (3) whether the opposing counsel or party agrees or objects to the requested extension.
Rules of the United States District Court for the Western District of Oklahoma 14(H) (1982).

3. Local Rule 14(A) provides in pertinent part:
 Each party opposing [a] motion, application or objection shall, within fifteen (15) days after the same is filed, file with the Clerk and serve upon all other parties a response which shall be supported by a concise brief if the motion, application or objection is opposed. Any motion, application or objection which is not opposed within fifteen (15) days, as set out above, shall be deemed confessed.
Rules of the United States District Court for the Western District of Oklahoma 14(A) (1982).

ties also wrapped chains around the entire length of Meade's forearms. Throughout the attack, Grubbs and the other unidentified deputies threatened Meade, putting him in fear of his life. The attack began long after Meade's arrest and several hours after he had been placed in custody. Meade did not resist or use any force of his own.

■ After the attack, Meade allegedly requested medical assistance. He was told that medical help would be forthcoming; however, no such treatment was ever provided. As a result, Meade sustained serious physical and emotional injuries. According to Meade, this was a malicious and excessive use of force which violated Oklahoma law and the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments.[4]

Meade's Second Amended Complaint also asserted that the Sheriff of Oklahoma County (J.D. Sharp) and various members of the Board of County Commissioners for Oklahoma County (F.G. "Buck" Buchanan, Shirley Darrell and Fred Snyder) exhibited a deliberate and wilful indifference to Meade's medical needs, violating his constitutional rights to due process and freedom from cruel and unusual punishment. According to Meade, the Sheriff and the Commissioners engaged in the common practice and pattern of failing to exercise reasonable care in the employment of deputy sheriffs, to provide adequate training for deputy sheriffs in circumstances involving the use of force to effect an arrest, and to properly supervise deputies or adopt adequate disciplinary policies for their misconduct. These acts, Meade contended, constituted deliberate indifference and/or gross and reckless negligence regarding Meade's constitutional rights, directly resulting in Meade's injuries.

Meade's complaint also charged that Attorney General Turpen, and six members of the Oklahoma Council on Law Enforcement Education and Training (Henslee, Reed, Coffelt, McBride, Mueller and Rayburn) engaged in the common practice and pattern of improperly training, or enforcing training requirements for Oklahoma law enforcement officers on the use of force in arresting a suspect. Moreover, these seven defendants failed to provide adequate investigation and enforcement policies and procedures for the enforcement of state statutory requirements. Such violations of state law allegedly constituted a deliberate indifference and/or gross and reckless negligence with respect to Meade's constitutional rights.

The complaint alleged that Turpen, Fulton (the Director of the Oklahoma Department of Human Services), and Joan Leavitt, M.D. (the Commissioner of the Oklahoma Department of Health) engaged in the common practice and pattern of failing to exercise reasonable care in the enforcement of state standards for county jails pertaining to admission and release procedures, security measures, staff training and provision of adequate medical care. Moreover, according to Meade, Turpen, Fulton and Leavitt failed to provide adequate training for Oklahoma law enforcement officers in circumstances involving the use of force to make an arrest and the provision of adequate medical care to pretrial detainees. Finally, these defendants purportedly failed to provide adequate investigation and enforcement policies with respect to state statutory requirements. Such acts, Meade's complaint contends, constituted deliberate indifference and/or gross and reckless negligence, which directly resulted in Meade's physical and emotional injuries.

Meade averred that he incurred medical expenses of approximately $7,000; endured severe pain and suffering; and sustained permanent bodily injury. His complaint demanded judgment against all the defendants, jointly and severally, as well as recovery for lost wages, compensatory damages and punitive damages.

## II. LOCAL RULE 14(A)

■ One ground for the dismissal was that Meade failed to respond to the motions

---

**4.** We note that the Eighth Amendment does not apply to pretrial detainees. *See Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979).

to dismiss as required by Local Rule 14(A). Meade argues that the circumstances did not justify dismissal with prejudice, which was an abuse of discretion. We agree.[5]

■ In *Meeker v. Rizley*, 324 F.2d 269 (10th Cir.1963), we reversed a default judgment against a *pro se* plaintiff for his failure to appear at a pretrial conference. The plaintiff had filed a motion alleging inability to employ counsel and the impracticability of holding a pretrial conference. We held that in the circumstances the entry of judgment and refusal to vacate it were a clear abuse of discretion. We recognized the general power to dismiss for failure to prosecute or comply with rules of federal procedure or an order of the court, but noted that the action had been pending for less than four months, and stated:

> There is no indication in the record that the plaintiff had been dilatory in prosecuting the case or inclined to deliberately disobey any order of the court for the purpose of delay. Plaintiff's only infrac-

tion was his failure to appear at a hearing on pre-trial matters which were the first noticed for disposition in the case. While we cannot excuse the failure to be present when these matters were noticed for hearing, still, if we treat the court's action as a dismissal, such action, under the circumstances of this case, was too drastic and a clear abuse of discretion. The law favors the disposition of litigation on its merits. *Davis v. Parkhill–Goodloe Co.*, 5 Cir., 302 F.2d 489 [1962]; Moore's Federal Practice, Vol. 6, § 55.10(1), p. 1829. Dismissal is a harsh sanction and should be resorted to only in extreme cases.

*Id.* at 271–72. Such a dismissal with prejudice is clearly a severe sanction reserved for extreme circumstances.[6]

■ Moreover, dismissal is usually appropriate "only where a lesser sanction would not serve the interest of justice." *Cohen v. Carnival Cruise Lines, Inc.*, 782 F.2d 923, 925 (11th Cir.1986).[7] We are

---

**5.** Although Rule 14(A) states that "[a]ny motion ... which is not opposed within fifteen (15) days ... shall be deemed confessed, Local Rule for the Western District of Oklahoma 14(A) (1982), we nonetheless read the Rule as affording discretion to the trial court. The Rule goes on to provide that "[t]he Court may, in its discretion, shorten or lengthen the time in which to respond." In addition, Local Rule 1(D) states: "The trial judge, in any civil or criminal case, *may in his discretion waive any requirement of these Rules when in his opinion the administration of justice requires such waiver....*" (Emphasis added). *See also Woodmore v. Git–N–Go*, 790 F.2d 1497, 1498 (10th Cir.1986) (interpreting local rule providing that failure to comply "shall subject the case to an Order of Dismissal" as "requiring the court's discretion"); *United States v. Warren*, 601 F.2d 471, 473–74 (9th Cir.1979) (rule that failure to file a brief "shall constitute a consent of the party failing to file" viewed as discretionary).

**6.** Dismissal of an action with prejudice is a severe sanction, "applicable only in extreme circumstances." *Ford v. Fogarty Van Lines, Inc.* 780 F.2d 1582, 1583 (11th Cir.1986), *quoting State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir.1982); *Witt v. United States*, 681 F.2d 1144, 1149 (9th Cir.1982). Because dismissal with prejudice "defeats altogether a litigant's right to access to the courts," *Loya v. Desert Sands Unified School District*, 721 F.2d 279, 280 (9th Cir.1983), it should be used as "a weapon of last, rather than first, resort." *Maggette v. Dalsheim*, 709 F.2d 800, 803 (2d Cir.1983); *Meehan*

*v. Snow*, 652 F.2d 274, 277 (2d Cir.1981) (per curiam). Generally, a court should dismiss a claim only where there has been a "clear record of delay or contumacious conduct by the plaintiff." *Ford*, 780 F.2d at 1583, *quoting Graves v. Kaiser Aluminum & Chemical Co.*, 528 F.2d 1360, 1361 (5th Cir.1976); *Pardee v. Stock*, 712 F.2d 1290, 1292 (8th Cir.1983), *quoting M.S. v. Wermers*, 557 F.2d 170, 175 (8th Cir.1977); *John v. State of Louisiana*, 828 F.2d 1129, 1131 (5th Cir.1987), *quoting Price v. McGlathery*, 792 F.2d 472, 474 (5th Cir.1986) (per curiam). *See also Hollis v. United States*, 744 F.2d 1430, 1432 (10th Cir.1984) ("Dismissals for failure to follow the orders of the court are often the consequences of extended or repeated failure by litigants to adhere to ongoing orders of the court."); *Farmers Plant Food v. Fisher*, 746 F.2d 451, 452 (8th Cir.1984) ("[D]ismissal ... should be used only in cases of willful disobedience of an order of court or persistent and continued failure to prosecute a complaint.").

**7.** *See also Ramsey v. Signal Delivery Serv. Inc.,* 631 F.2d 1210, 1214 (5th Cir.1980) ("The trial court should have considered some sanction other than dismissal with prejudice for failure to observe a filing deadline."); *Witt*, 681 F.2d at 1149 ("[D]ismissal should be imposed only ... after consideration of less drastic alternatives."); *D G Shelter Products Co. v. Forest Products Co.*, 769 F.2d 644, 645 (10th Cir.1985) ("[W]hile the severe sanction of dismissal is an available remedy for failure of counsel, we have indicated that the court should explicitly weigh whether

convinced that the circumstances here clearly did not justify dismissal of Meade's action with prejudice. There is no evidence that the defendants were prejudiced by Meade's failure to comply with Local Rules 14(A) and 14(H). Any inconvenience to the trial court, either in terms of delay or its ability to properly decide the motions to dismiss, was at most *de minimis*. The last of the defendants' motions to dismiss was filed on September 24, 1984. Under Local Rule 14(A), therefore, the final deadline for responding to any of the motions was October 9. Since Gassaway's Application for Extension of Time requested that the deadline be extended only until October 15, 1984, the delay at issue amounted to only six days. This does not constitute the type of "intolerable burden on [the] district court," *Shea*, 795 F.2d at 1075, that would justify dismissal. The failure to respond to the defendants' motions to dismiss was not so severe a burden on the court as to justify dismissal.[8]

With respect to culpability, we note that on October 4, the date on which Gassaway entered an appearance as Meade's attorney, the time to respond to some of the pending motions had already passed. Consequently, at least with respect to the motions that were filed more than fifteen days before October 4 the failure to comply with Rule 14(A) cannot be laid at the feet of the attorney. *See, e.g., In re Sanction of Baker*, 744 F.2d at 1442 ("If the fault lies with the attorneys, that is where the impact of sanction should be lodged."). Furthermore, Meade's failure to comply with Rule 14(A) cannot be excused on the ground that he was a *pro se* litigant and had no knowledge of the requirements of Rule 14(A). *See, e.g., Mitchell v. Inman*, 682 F.2d 886, 887 (11th Cir.1982) (a local rule generally "should not serve as a basis for dismissing a *pro se* civil rights complaint where ... there is nothing to indicate plaintiff even was made aware of it prior to dismissal."). On four previous occasions, Meade had cited Rule 14 as the ground for responding to motions to dismiss. *See* I R. 14, 24, 46, 54.

We conclude, however, that the facts did not warrant dismissal with prejudice. Prior to the motions to dismiss the Second Amended Complaint, Meade had timely re-

---

sanctions against the offending attorney will not serve the court's legitimate purpose in imposing sanctions."). When a dismissal is with prejudice, "a trial court must explain why it imposed the extreme sanction of dismissal." *Woodmore v. Git–N–Go*, 790 F.2d 1497, 1499 (10th Cir.1986) (per curiam). *See also In re Sanction of Baker*, 744 F.2d 1438, 1442 (10th Cir.1984), *cert. denied*, 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). ("[T]he trial court should set forth in the record the justification for the sanction imposed.").

In evaluating the propriety of a trial court's action in dismissing a claim with prejudice, the courts have generally focused on three aggravating factors: (1) the degree of actual prejudice to the defendant, *see, e.g., Shea v. Donohoe Constr. Co.*, 795 F.2d 1071, 1074–75 (D.C.Cir.1986); *John*, 828 F.2d at 1131; (2) the amount of interference with the judicial process, *see, e.g., Shea*, 795 F.2d at 1075–77; *Pardee*, 712 F.2d at 1292; and (3) the culpability of the litigant. *See, e.g., Garrison*, 714 F.2d at 760; *John*, 828 F.2d at 1131. Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits, *see, e.g., Farmers Plant Food*, 746 F.2d at 452; Fed.R.Civ.P. 1, is dismissal an appropriate sanction. *See Garrison*, 714 F.2d at 760 ("Dismissal with prejudice is a harsh sanction which should be imposed only after balancing the policy of giving the plaintiff her day in court against policies of

preventing undue delay, avoiding court congestion, and preserving respect for court procedures."); *Pardee*, 712 F.2d at 1292 (A reviewing court must "consider whether in the particular circumstances of the case the needs of the court in advancing a crowded docket and preserving respect for the integrity of its internal procedures are sufficient to justify the harsh consequences of forever denying a litigant his day in court.").

8. We believe this is particularly true in the present case. Earlier, the defendants had filed motions to dismiss to which Meade had responded. To some extent, these earlier motions closely paralleled the motions to which Meade failed to respond. *Compare, e.g.,* Brief in Support of Motion to Dismiss, filed July 25, 1984 *and* Brief in Support of Motion to Dismiss the Board of County Commissioners of Oklahoma County, Sheriff J.D. Sharp, and Deputy Grubbs, Badge # 128, filed August 8, 1984 *with* Brief in Support of Motion to Dismiss Defendants Grubbs, J.D. Sharp, F.G. "Buck" Buchanan, Shirley Darrell, Fred Snyder, and the Board of County Commissioners of Oklahoma County, filed September 24, 1984. As a consequence, any assistance the trial court would have received from Meade's responses to the motions could have been gleaned from Meade's earlier responses.

sponded to earlier motions and had filed briefs in support of his position. *See, e.g.,* I R. 14, 24, 45, 53. Thus, Meade's failure to timely respond to defendants' motions did not amount to a "clear record of delay or contumacious conduct" necessary to justify dismissal.[9] The case had been pending for only three and a half months when the dismissal with prejudice was entered.

In sum, we hold that the district court abused its discretion in dismissing Meade's suit for violation of the local rule, and that ruling is reversed.

## III. THE STATUTE OF LIMITATIONS

■ The county defendants argue that the action commenced on July 3, 1984 is barred by Oklahoma's one-year statute of limitations for actions brought for assault or battery. Okla.Stat.Ann. tit. 12, § 95(4)

(1987 cum. supp.). Meade urges application of the two-year statute of limitations for "injury to the rights of another, not arising out of contract, and not hereinafter enumerated." Okla.Stat.Ann. tit. 12, § 95(3) (1987 cum. supp.). We agree that the two-year statute of limitations applies and that Meade's action is not time-barred.

Approximately four months before Meade filed his suit, in *Garcia v. Wilson,* 731 F.2d 640 (10th Cir.1984) (en banc), *aff'd* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), we considered the question of the appropriate state statute of limitations to apply in § 1983 actions. We announced that "all section 1983 claims in this circuit will be uniformly ... so characterized [as actions for injury to personal rights] for statute of limitations purposes." *Id.* at 651.[10]

---

**9.** *See Fox v. Strickland,* 837 F.2d 507 (D.C.Cir. 1988) (dismissal of complaint by *pro se* litigant because of failure to respond to motion to dismiss in the time prescribed by local rule was an abuse of discretion); *Lyons v. Goodson,* 787 F.2d 411 (8th Cir.1986) (dismissal of *pro se* litigant's complaint as untimely after complaint was rejected by clerk because plaintiff supplied nine copies instead of thirteen, as required by local rules, was improper); *Cohen v. Carnival Cruise Lines, Inc.,* 782 F.2d 923 (11th Cir.1986) (plaintiff's failure to timely retain local counsel in violation of local rule did not justify trial court's dismissal with prejudice); *Loya v. Desert Sands Unified School Dist.,* 721 F.2d 279 (9th Cir.1983) (trial court's dismissal of Title VII action as untimely after clerk rejected the complaint because it was typed on 8½ by 13 inch paper, in violation of local rule, was error); *Witt v. United States,* 681 F.2d 1144 (9th Cir. 1982) (district court abused discretion when it dismissed plaintiff's *pro se* complaint because she failed to file a memorandum of points and authorities opposing motion to dismiss where complaint had contained legal position and authorities); *Ramsey v. Signal Delivery Serv., Inc.,* 631 F.2d 1210 (5th Cir.1980); (trial judge abused his discretion in granting motion and dismissing with prejudice when plaintiff violated local rule by failing to respond to motion); *Arundar v. DeKalb County School Dist.,* 620 F.2d 493 (5th Cir.1980) (trial court erred in dismissing complaint with prejudice because plaintiff failed to file a brief opposing motion to dismiss, in violation of local rule; dismissal modified to be without prejudice).

**10.** In a series of other decisions handed down contemporaneously with or shortly after *Garcia,* we confronted the problem of applying *Garcia* when a state provided both a statute of limita-

tions for enumerated intentional torts; and a limitation for actions for injury to the rights of another, applying the latter. *See, e.g., Hamilton v. City of Overland Park,* 730 F.2d 613, 614 (10th Cir.1984) (en banc) (applying Kansas statute of limitations for "[a]n action for injury to the rights of another, not arising on contract, and not herein enumerated" rather than the statute for claims of "assault, battery, malicious prosecution, or false imprisonment"), *cert. denied,* 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985); *Mismash v. Murray City,* 730 F.2d 1366, 1367 (10th Cir.1984) (en banc) (applying Utah statute of limitations for "[a]n action for relief not otherwise provided for by law" rather than the statute for claims of "libel, slander, assault, battery, false imprisonment or seduction"), *cert. denied,* 471 U.S. 1052, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985); *McKay v. Hammock,* 730 F.2d 1367, 1370 (10th Cir.1984) (en banc) (applying Colorado residual statute of limitations rather than the statute for assault and battery and false imprisonment).

Moreover, in *Abbitt v. Franklin,* 731 F.2d 661 (10th Cir.1984) (en banc), we expressly determined that the appropriate statute of limitations for § 1983 actions brought in Oklahoma was a two-year statute of limitations governing "an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated." *See Abbitt v. Franklin,* 731 F.2d 661, 663 (10th Cir.1984) (en banc); *EEOC v. Gaddis,* 733 F.2d 1373, 1377 (10th Cir.1984); *see also Jackson v. Grider,* 691 P.2d 468, 472 (Okla.Ct.App.1984) (same holding); *cf. Clulow v. State of Oklahoma,* 700 F.2d 1291, 1299–1300 (10th Cir.1983) (applying Oklahoma's two-year statute of limitations in a section 1983 case), *overruled, Garcia v. Wilson,* 731 F.2d 640, 648–51 (10th Cir.1984) (en banc), *aff'd,* 471 U.S. 261, 105 S.Ct. 1938, 85

Shortly after these cases were decided, the Supreme Court affirmed our decision in *Garcia,* holding that "§ 1983 claims are best characterized [for statute of limitations purposes] as personal injury actions." *Wilson v. Garcia,* 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985). Because the language employed by the Supreme Court in characterizing § 1983 actions differs from that adopted by this court, however, we must determine whether the Supreme Court intended a different analysis than that used by this court in *Garcia.* For a variety of reasons, we conclude that it did not.

The Supreme Court unequivocally affirmed our decision in *Wilson v. Garcia,* finding our review of the case law to be "exhaustive," *id.* at 276, 105 S.Ct. at 1947, and the reasoning of the opinion "persuasive." *Id.* at 266, 105 S.Ct. at 1942. *See, e.g.,* Pagan, *Virginia's Statute of Limitations For Section 1983 Claims after Wilson v. Garcia,* 19 U. of Richmond L.Rev. 257, 263 (1985) ("The Supreme Court endorsed the Tenth Circuit's analysis in [*Garcia*] seemingly without reservation."). The Court stated:

> In view of our holding that § 1983 claims are best characterized as personal injury actions, the Court of Appeals correctly applied the 3–year statute of limitations governing 'actions for an injury to the person or reputation of any person.' N.M.Stat.Ann. § 37–1–8 (1978).

471 U.S. at 280, 105 S.Ct. at 1949.

■ The phrase adopted by the Court in its holding—"personal injury actions"—appears to have been viewed as synonymous with the phrase "injuries to personal rights," 471 U.S. at 278, 105 S.Ct. at 1948, and was not intended to be read narrowly. *See, e.g., Wilson,* 471 U.S. at 277, 105 S.Ct. at 1948 ("The unifying theme of [§ 1983] is reflected in the language of the Fourteenth Amendment that unequivocally recognizes the equal status of every *'person'* subject to the jurisdiction of the separate States. The Constitution's command is that all

*'persons'* shall be accorded the full privileges of citizenship; no *'person'* shall be deprived of life, liberty or property without due process of law or be denied the equal protection of the laws. A violation of that command is an injury to the individual rights of the person."); *id.* at 278, 105 S.Ct. at 1948 ("Had the 42d Congress expressly focused on the issue decided today, we believe it would have characterized § 1983 as conferring a general remedy for injuries to personal rights."). *See also id.* at 284, 105 S.Ct. at 1951–52 (O'Connor, J., dissenting).

Furthermore, subsequent decisions of the Court also suggest that it did not intend the phrase "personal injury actions" to be read narrowly. *See, e.g., Goodman v. Lukens Steel Co.,* —— U.S. ——, ——, 107 S.Ct. 2617, 2620–21, 96 L.Ed.2d 572 (section 1981, like § 1983, implicates a broad array of "personal rights"); *Springfield Township School Dist. v. Knoll,* 471 U.S. 288, 105 S.Ct. 2065, 85 L.Ed.2d 275 (1985) ("[I]n *Wilson v. Garcia* ... we ... held that all § 1983 claims should be characterized for statute of limitations purposes as actions to recover damages for injuries to the person.") *Accord.* Pagan, *Virginia's Statute of Limitations For Section 1983 Claims after Wilson v. Garcia,* 19 U. of Richmond L.Rev. 257, 268 (1985) ("Justice Stevens did not use 'personal injury' in the ... narrow sense.... The context indicates that 'personal injury' was merely Justice Steven's shorthand version of 'injury to the person.'"). Similarly, the Court's quotation of *Almond v. Kent,* 459 F.2d 200, 204 (4th Cir.1972), indicates that the phrase "personal injuries" was used interchangeably with "injury to personal rights." Thus we are persuaded that we should apply the Oklahoma two-year limitation for "an action for injury to the rights of another" of Okla.Stat.Ann. tit. 12, § 95(3), and not the one year limitation for actions for assault or battery, giving careful consideration to the Supreme Court's reasoning in *Wilson.*

L.Ed.2d 254 (1985); *Crosswhite v. Brown,* 424 F.2d 495, 496 & n. 2 (10th Cir.1970) (per cu-

riam) (same).

We reaffirm our view that the most analogous statute of limitations in Oklahoma is the two-year provision on claims for "injury to the rights of another, not arising on contract, and not hereinafter enumerated." *See Abbit v. Franklin,* 731 F.2d 661, 663 (10th Cir.1984). This statute is the only provision in Oklahoma which is sufficiently broad to encompass both unintentional *and* intentional infliction of personal injury.[11]

In conclusion, since Meade's suit was commenced less than two years after the alleged assault, we hold that the action was not barred by the one-year Oklahoma limitation and reject the argument for affirmance on that ground. Defendants' arguments are apparently centered on the assault and battery claim and the Oklahoma one-year limitation for such claims. We are convinced that our reasoning is equally applicable to the claim for denial of medical care, emotional distress and all his related claims, which were also timely asserted under the two-year statute we apply.

## IV. ELEVENTH AMENDMENT IMMUNITY

All of the State defendants except Fulton also argue that they are immune under the Eleventh Amendment from liability for damages in an action brought against them in their official capacities. We agree.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by

---

**11.** *Compare Kimberly v. DeWitt,* 606 P.2d 612, 616 (Ct.App.Okla.1980) (Oklahoma's general statute of limitations for negligence is two years), with *Williams v. Lee Way Motor Freight, Inc.,* 688 P.2d 1294, 1296–98 (Okla.1984) (same two-year statute of limitations governs claims for intentional infliction of emotional distress), *and Smith v. Woodhollow Apartments,* 463 F.Supp. 16, 21 (W.D.Okla.1978) (same two-year statute of limitations governs claims for racial discrimination in housing).

We recognize that some other courts have read *Wilson* to require application of the statute of limitations governing actions for specifically enumerated intentional torts rather than a general statute covering injury to the rights of plaintiff. *See Mulligan v. Hazard,* 777 F.2d 340, 343–44 & n. 4 (6th Cir.1985), *cert. denied,* 476 U.S. 1174, 106 S.Ct. 2902, 90 L.Ed.2d 988 (1986); *Gates v. Spinks,* 771 F.2d 916, 919 n. 6, 920 (5th Cir.1985), *cert. denied,* 475 U.S. 1065, 106 S.Ct. 1378, 89 L.Ed.2d 603 (1986); *Jones v. Preuit & Mauldin,* 763 F.2d 1250, 1253–56 (11th Cir. 1985), *cert. denied,* 474 U.S. 1105, 106 S.Ct. 893, 88 L.Ed.2d 926 (1986); *Cook v. City of Minneapolis,* 617 F.Supp. 461, 463–65 (D.Minn.1985); *compare Carroll v. Wilkerson,* 782 F.2d 44 (6th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 330, 93 L.Ed.2d 302 (1986), *with Mulligan, supra. See generally County of Wayne v. Carroll,* — U.S. —, 107 S.Ct. 330, 93 L.Ed.2d 302 (1986) (White, J., dissenting from the denial of cert.) (noting that the circuits are split in applying *Garcia* when a state has a catch-all statute of limitations and one covering specific intentional torts). These courts have based their decisions on two grounds: first, according to their interpretation of *Wilson,* specific intentional torts are most analogous to the kinds of activities § 1983 was intended to prevent; and second, they read *Wilson* as disapproving of the application of a general statute governing injuries to the rights of plaintiffs for § 1983 actions.

We believe such an interpretation of *Wilson* is lawed. First, while *Wilson* did acknowledge that § 1983 was designed to prevent such intentional torts as "whippings and lynchings and banishings [that] have been visited upon unoffending American citizens," *Wilson,* 471 U.S. at 276, 105 S.Ct. at 1947, it also focused on the myriad of applications for § 1983. *See, e.g., id.* at 273, 105 S.Ct. at 1946 ("A catalog of other constitutional claims that have been alleged under § 1983 would encompass numerous and diverse topics and subtopics: discrimination in public employment on the basis of race or the exercise of First Amendment rights, discharge or demotion without procedural due process, mistreatment of schoolchildren, deliberate indifference to the medical needs of prison inmates, the seizure of chattels without advance notice or sufficient opportunity to be heard—to identify only a few.") (footnotes omitted). Moreover, we believe the characterization of § 1983 actions as more akin to particular intentional torts than to other types of actions incorporates the same type of inappropriate attempt to categorize § 1983 claims that *Wilson* was sought to prevent.

Finally, a close reading of *Wilson* demonstrates that it does not disapprove of applying a general tort statute of limitations to § 1983 claims. Rather, the Court only rejected categorizing § 1983 claims as "actions based on a statute." *See, e.g., Wilson,* 471 U.S. at 278, 105 S.Ct. at 1948 ("The relative scarcity of statutory claims when § 1983 was enacted makes it unlikely that Congress would have intended to apply the catchall periods of limitations for statutory claims that were later enacted by many States.").

Citizens or Subjects of any Foreign State." U.S. Const. Amend. 11. Although the express language of the Amendment encompasses only suits brought against a state by citizens of another state, it has long been settled that the Amendment also bars suit against a state by its own citizens. *E.g., Papasan v. Allain,* 478 U.S. 265, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986); *see Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).[12] However, the immunity conferred by the Eleventh Amendment extends only to the state, its instrumentalities, and its officers in their official capacities. *Mount Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). While an agency of the state may fall under the protective umbrella of the Amendment, political subdivisions of the state do not. *Id. See also Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 400–01, 99 S.Ct. 1171, 1176–77, 59 L.Ed.2d 401 (1979); *Lincoln County v. Luning,* 133 U.S. 529, 530, 10 S.Ct. 363, 363, 33 L.Ed. 766 (1890).

■ In determining whether an agency is protected by the Eleventh Amendment, therefore, the critical inquiry is whether the entity "is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend." *Mount Healthy,* 429 U.S. at 280, 97 S.Ct. at 572. Such a determination is made by examining the powers, nature and characteristics of the agency under state law. *Id. See also Martinez v. Bd. of Education of Taos Mun. School Dist.,* 748 F.2d 1393, 1396 (10th Cir.1984); *Unified School Dist. No. 480 v. Epperson,* 583 F.2d 1118, 1121 (10th Cir.1978).

■ We hold that all three of the agencies at issue—the Oklahoma Department of Health, the Oklahoma Council on Law Enforcement Education and Training, and the Oklahoma Attorney General's office—are arms of the State.[13] First, the Attorney General of Oklahoma serves as the State's "Chief Law Officer," Okla.Stat.Ann. tit. 74, § 18 (1965), and is empowered under the State constitution to exercise "[t]he Executive authority of the State," Okla. Const. Art. 6, § 1. His office is an arm of the State and therefore entitled to Eleventh Amendment immunity. *See Steele v. Stephan,* 633 F.Supp. 950, 953–54 (D.Kan. 1986). Second, we also believe that the Oklahoma Department of Health is an arm of the State. The Department exercises authority over matters affecting the public health. *See* Okla.Stat.Ann. tit. 63, §§ 1–105 & 1–106 (1984 & 1987 cum. supp.)[14] Finally, the Council on Law Enforcement

**12.** On this issue four Justices favored overruling *Hans* in *Welch v. Texas Department of Highways & Public Transportation,* — U.S. ——, 107 S.Ct. 2941, 97 L.Ed.2d 389. In his special concurrence, Justice Scalia refused to address the issue but noted: "Regardless of what one may think of *Hans* [*v. Louisiana*], it has been assumed to be the law for nearly a century." *Welch v. State Department of Highways & Public Transportation,* 107 S.Ct. at 2958 (Scalia, J., concurring in part & concurring in the judgment). Similarly, the four-member plurality opinion stated that "the fundamental principle enunciated in *Hans* has been among the most stable in our constitutional jurisprudence." *Id.* at 2952 (plurality op.). Nonetheless, four other Justices in *Welch* would have preferred to overrule *Hans* and hold that "the [Eleventh] Amendment bars only federal actions brought against a State by citizens of *another* State or by foreign aliens." *Id.* at 2962 (Brennan, J., dissenting) (emphasis added).

**13.** We note that Oklahoma's Governmental Tort Claims Act defines the term "State" broadly to include "any office, department, agency, author-ity, commission, board, institution, hospital, college, university, or other instrumentality thereof." Okla.Stat.Ann. tit. 51, § 152(10) (1987 cum. supp.).

**14.** For example, "the State Department of Health is the official agency of the State of Oklahoma in all matters relating to public health which require or authorize cooperation of the State of Oklahoma with the Federal Government or any department or agency thereof." Okla.Opin.Atty.Gen. No. 68–121, at 39 (Feb. 15, 1968). *See* Okla.Stat.Ann. tit. 63, § 1–106(b)(12) (1987 cum.supp.). Thus, such powers entitle the Department to share in the State's Eleventh Amendment immunity. *See Miener v. State of Missouri,* 673 F.2d 969, 980–81 (8th Cir.) (holding that the Missouri Department of Mental Health is entitled to Eleventh Amendment immunity), *cert. denied,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982).

Education and Training exercises authority over the training and certification of all police and peace officers in the state. Okla.Stat.Ann. tit. 70, § 3311 (1987 cum. supp.).[15]

■ Consequently, we hold that the Eleventh Amendment bars the federal court from awarding damages to the plaintiff against defendants Turpen, Leavitt, Henslee, Reed, Coffelt, McBride, Mueller and Rayburn in their official capacities.[16]

## V. THE SUFFICIENCY OF MEADE'S ALLEGATIONS REGARDING THE EXISTENCE OF A CONSTITUTIONAL CLAIM

In addition to dismissing Meade's action under Local Rule 14(A), the trial court alternatively granted defendants' motions to dismiss on the ground that Meade's complaint failed to state a claim upon which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6). On appeal, defendants have renewed this attack, asserting that Meade's Second Amended Complaint is "merely conclusory" and that it fails to allege the predicate facts necessary for a constitutional claim under § 1983.

■ To state a claim under 42 U.S. C. § 1983 (1982), a plaintiff must allege facts demonstrating two elements:

First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory."

*Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). A constitutional claim under § 1983 should not be dismissed unless it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *Owens v. Rush,* 654 F.2d 1370, 1378–79 (10th Cir.1981). In reviewing a dismissal under Fed.R.Civ.P. 12(b)(6), all of the allegations in the complaint must be accepted at face value, and must be construed in the light most favorable to the plaintiff. *Lessman v. McCormick,* 591 F.2d 605, 607 (10th Cir.1979). Moreover, *pro se* complaints, like the one involved here, are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam); (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam)).

### A.

#### *The Claim of Excessive Force*

##### 1.

#### Existence of a Constitutional Violation

■ The State defendants argue that the plaintiff's allegations reveal nothing

---

**15.** *See Rock v. McCoy,* 763 F.2d 394, 397 (10th Cir.1985) (CLEET is "the State of Oklahoma's school where all Oklahoma police officers are trained"); Okla.Opin.Atty.Gen. No. 85–29, at 2 (July 30, 1985) ("CLEET was created by the Legislature and is vested with, *inter alia,* the responsibility of certifying that Oklahoma police or peace officers have satisfactorily completed the basic police course offered by them"). *See also* Okla.Opin.Atty.Gen. No. 86–46, at 5 (Oct. 9, 1986) (slip op.) (military security guard must forfeit his position if he fails to successfully complete a basic police training course offered by the Council on Law Enforcement Education and Training). Therefore, it too is an arm of the state for purposes of Eleventh Amendment immunity. *See Prebble v. Brodrick,* 535 F.2d 605, 610 (10th Cir.1976) (holding that the University of Wyoming is entitled to Eleventh Amendment immunity); *Brennan v. University*

*of Kansas,* 451 F.2d 1287, 1290 (10th Cir.1971) (holding that the University of Kansas and University Press of Kansas are "arms of the state" and thus entitled to Eleventh Amendment immunity). *Cf. McGaha v. Board of Regents,* 691 P.2d 895, 898 (Okla.1984) (holding that Board of Regents of the University of Oklahoma is entitled to sovereign immunity in that education is a governmental function and the Board thus serves "as an arm of state government").

**16.** The plaintiff has also sued these defendants in their individual capacities. These claims are not barred by the Eleventh Amendment because "[a] victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him." *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985).

more than a simple assault and battery which, although perhaps actionable under state law, is not of constitutional magnitude. While it is true that "[n]ot all force used by police rises to a constitutional violation," *Hewitt v. City of Truth or Consequences*, 758 F.2d 1375, 1379 (10th Cir.), *cert. denied*, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108, (1985), it is equally true that the use of *excessive* force against an arrestee or pretrial detainee, like Meade, is actionable under § 1983 as a deprivation of life or liberty without due process of law, in violation of the Fourteenth Amendment. *See Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir.1985); *Hewitt v. City of Truth or Consequences*, 758 F.2d at 1379; *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1433 (10th Cir.1984), *vacated on other grounds*, 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985); *Garrick v. City and County of Denver*, 652 F.2d 969, 972 (10th Cir.1981); *Morgan v. Labiak*, 368 F.2d 338, 340 (10th Cir.1966). *See also Collins v. Hladky*, 603 F.2d 824 (10th Cir.1979) (per curiam) (holding that alleged assault by county sheriff and two deputies may entitle plaintiff to relief under section 1983). In determining whether the constitutional line has been crossed, a court must

inquire into the amount of force used in relationship to the need presented, the extent of the injury inflicted and the motives of the state officer. If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely carelessness or unwise, excessive zeal amounting to an abuse of official power that shocks the conscience, it may be redressed under § 1983.

*Wise v. Bravo*, 666 F.2d 1328, 1333–34 (10th Cir.1981). *See also Hewitt v. City of Truth or Consequences*, 758 F.2d at 1379.

We feel that Meade's allegations are sufficient to state a valid constitutional claim for the use of excessive force. According to the Second Amended Complaint, Meade was arrested in Warr Acres, Oklahoma at approximately 5:00 p.m. on March 25, 1983, and was transported to the Oklahoma County jail two hours later. While waiting to be booked Meade began to feel faint and bent down to avoid passing out. Deputy Sheriff Grubbs then allegedly approached Meade "and, without cause or justification, deliberately kicked plaintiff's left thigh and told plaintiff to get up, to which plaintiff responded that he was feeling faint and, in reply, Defendant GRUBBS grabbed and twisted plaintiff's fingers in a violent manner to force him to rise." I.R. 36. Meade avers that Grubbs slammed Meade's head into the barred walls, dragged him by the hair, choked him, twisted his arm, applied pressure against his neck with a marker, and beat and kicked him on the side, face, head, legs and stomach. I.R. 36. Other unidentified deputies, John Does 1 and 2, "etc.", allegedly assisted Grubbs by holding Meade's head in an armlock while other deputies beat him, violently applying their knuckles into his temple, wrapping chains around the length of his forearms, and beating and kicking him in the side, face, head, legs, groin and stomach. I.R. 36–37. Finally, Meade alleged that the deputies had threatened him, and that he did not use any force, even to defend himself, at any time during the assault. I.R. 37.

We hold that the Second Amended Complaint sufficiently alleges a claim under § 1983 for the use of excessive force as against Deputy Sheriff Grubbs and John Does 1 and 2 in their individual capacities, and reverse the dismissal with respect to that claim.

### 2.

### Supervisory Liability

We must next consider whether a § 1983 claim is stated against additional named defendants for the use of excessive force. "A supervisor is not liable under section 1983 unless an 'affirmative link' exists between the [constitutional] deprivation and either the supervisor's 'personal participation, his exercise of control or direction, or his failure to supervise.'" *Specht v. Jensen*, 832 F.2d 1516, 1524 (10th Cir.1987) (reh'g *en banc* granted on other grounds, and judgment, but not opinion,

vacated Feb. 4, 1988, 837 F.2d 940), *quoting McKay v. Hammock*, 730 F.2d 1367, 1374 (10th Cir.1984). *See also Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); *McClelland v. Facteau*, 610 F.2d 693, 695 (10th Cir.1979). To be liable, a superior must have "participated or acquiesced in the constitutional deprivations of which complaint is made." *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir.1976). A supervisor or municipality may be held liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable. *Hays v. Jefferson County*, 668 F.2d 869, 873–74 (6th Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). *See City of Springfield v. Kibbe*, —— U.S. ——, ——, 107 S.Ct. 1114, 1121, 94 L.Ed.2d 293 (1987) (O'Connor, J., dissenting) (arguing that inadequate police training is actionable under section 1983 only if it amounts to reckless disregard for or deliberate indifference to the rights of persons within the city's domain). Unless a supervisor has established or utilized an unconstitutional policy or custom, a plaintiff must show that the supervisory defendant breached a duty imposed by state or local law which caused the constitutional violation. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam) (quoting *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir.1976)).

Under Oklahoma law, a sheriff is responsible for the proper management of the jail in his county and the conduct of his deputies. Okla.Stat.Ann. tit. 19, §§ 513 & 547(A) (1962 & 1987 cum. supp.); *see Wolfenbarger v. Williams*, 774 F.2d 358, 365 (10th Cir.1985), *cert. denied*, 475 U.S. 1065, 106 S.Ct. 1376, 89 L.Ed.2d 602 (1986). As a result, "a sheriff is accountable in a § 1983 action whenever a sheriff, in a position of responsibility, knew or should have known of the misconduct, and yet failed to prevent future harm." *Anthony v. Baker*, 767 F.2d 657, 666 (10th Cir.1985).

■ Meade alleges that Sheriff Sharp customarily failed to properly supervise his deputies, that he was deliberately indifferent to Meade's constitutional rights, and

that at least three of his deputies participated in the assault. *See City of Springfield v. Kibbe*, 777 F.2d 801, 805–09 (1st Cir.1985), *cert. dismissed as improvidently granted*, —— U.S. ——, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987) (per curiam). We hold that the complaint sufficiently avers a § 1983 claim against Sharp in his individual capacity for improperly hiring, training, supervising and disciplining his deputies.

■ We hold, however, that the County Commissioners for Oklahoma County cannot be held liable for the deputies' alleged use of force. Under Oklahoma law, the Board has no statutory duty to hire, train, supervise or discipline the county sheriffs or their deputies. *See* Okla.Opin.Atty.Gen. No. 79–98, at 145 (May 15, 1979) ("[t]he District Attorney and the Sheriff are the only two [county] offices which involve any law enforcement duties"). *See also* Okla. Opin.Atty.Gen. No. 76–338, at 410 (Nov. 16, 1976) (Board of County Commissioners lacks authority to designate the number of deputies that a county officer may appoint). Consequently, unless the Commissioners voluntarily undertook responsibility for hiring or supervising county law enforcement officers, which is not alleged, they were not "affirmatively linked" with the alleged assault.

■ Likewise, we conclude that the Director of the State Department of Human Services (Fulton), the Commissioner of the State Department of Health (Leavitt), and the Attorney General of the State (Turpen) cannot be held liable for the alleged assault. None of these state officials has any statutory authority over the conduct of deputy sheriffs in making arrests and Meade has not alleged that any of them voluntarily assumed such responsibility. *See Howard v. Fortenberry*, 723 F.2d 1206, 1209–14 (5th Cir.), *vacated in part on other grounds*, 728 F.2d 712 (5th Cir.1984) (per curiam).

■ Finally, we conclude that the Second Amended Complaint alleges sufficiently a § 1983 claim against Henslee, Reed, Coffelt, McBride, Mueller and Rayburn, members of the Council on Law Enforcement, Education and Training. Under

Oklahoma law, the Council on Law Enforcement Education and Training exercises authority over the training and certification of all police and peace officers in the state. Okla.Stat.Ann. tit. 70, § 3311 (1987 cum. supp.); *see Rock v. McCoy,* 763 F.2d 394, 397 (10th Cir.1985) (CLEET is "the State of Oklahoma's school where all Oklahoma police officers are trained"); Okla. Opin.Atty.Gen. No. 85–29, at 2 (July 30, 1985) ("CLEET was created by the Legislature and is vested with, *inter alia,* the responsibility of certifying that Oklahoma police or peace officers have satisfactorily completed the basic police course offered by them"); *see also* Okla.Opin.Atty.Gen. No. 86–46, at 5 (Oct. 9, 1986) (slip op.) (military security guard must forfeit his position if he fails to successfully complete a basic police training course offered by the Council on Law Enforcement Education and Training).

■ The complaint alleges in substance that the Council committed gross and reckless negligence in breaching its statutory duty and that the breach directly resulted in the deputy sheriffs' assault against Meade. Since a complaint may not be dismissed unless the plaintiff can prove no set of facts under his allegations that would entitle him to relief, *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), we hold that the allegations here are sufficient to state a claim for relief against the Council members in their individual capacities under § 1983. Consequently, the dismissal was in error as against defendants.

To summarize, we hold that Meade's claim that excessive force was used against him states a cause of action against Sheriff Sharp and the members of the Council on Law Enforcement, Education and Training (Henslee, Reed, Coffelt, McBride, Mueller and Rayburn) in their individual capacities, and reverse the dismissal against them on that claim. However, we hold that Meade's complaint of excessive force does not state a claim against Fulton, Leavitt, Turpen, and the County Commissioners for

Oklahoma County (Buchanan, Darrell and Snyder) in their individual capacities, and affirm that ruling.

### 3.

### The Claim of Liability in Official Capacity

■ Unlike state officials, county employees may be sued in their official capacity. A judgment against a public servant in his official capacity imposes liability on the entity he represents, provided that it received notice and opportunity to respond. *See Brandon v. Holt,* 469 U.S. 464, 471–73, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985).[17] For a county to be held responsible, it must have caused the harm through the execution of its own policy or custom by those whose edicts or acts may fairly be said to represent official policy. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). When a policy is not unconstitutional in itself, the county cannot be held liable solely on a showing of a single incident of unconstitutional activity. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24 & 831, 105 S.Ct. 2427, 2436–37 & 2440, 85 L.Ed.2d 791 (1985) (plurality & Brennan, J., concurring in part & concurring in the judgment). However, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). For example, "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Id.* at 481, 106 S.Ct. at 1299. *See Lusby v. T.G. & Y. Stores, Inc.,* 796 F.2d 1307, 1312 n. 5 (10th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 275, 93 L.Ed. 2d 251 (1986).

17. As noted, the action against the Commissioner of the Department of Health, the Attorney General, and members of the Council on Law Enforcement Education and Training in their official capacities is barred by the Eleventh Amendment. However, Eleventh Amendment immunity extends only to *state* officials, and does not protect county or local officials.

Meade alleged that the assault was the result of Sheriff Sharp's "common practice and pattern" of improperly hiring, training, supervising and disciplining deputy sheriffs. I R. 39–40. Since Sheriff Sharp was responsible for establishing the county's policy regarding the use of force in the Oklahoma County jail, the complaint sufficiently attributed the wrongdoing to a county policy so as to withstand a motion to dismiss. *See* Okla.Stat.Ann. tit. 57, § 47 (1987 cum. supp.); *McKay v. Hammock*, 730 F.2d 1367, 1375 (10th Cir.1984) (en banc); *see also Rock v. McCoy*, 763 F.2d 394, 397 (10th Cir.1985) (holding that city may be liable under § 1983 if it was grossly negligent in failing to train police officers who allegedly assaulted the plaintiff); *Varela v. Jones*, 746 F.2d 1413, 1418 (10th Cir.1984) ("custom or policy may include [municipality's] continuing failure to train, supervise, or discipline its police force"). *Cf. Garcia v. Salt Lake County*, 768 F.2d 303, 308–09 (10th Cir.1985) (holding that the Sheriff's policy concerning medical care in county jails qualified as policy attributable to a municipal policymaker under *Monell*).

Thus it was error to dismiss the § 1983 claim against the Sheriff in his official capacity for excessive use of force since we cannot say that plaintiff could not prove facts that might establish wrongdoing attributable to the county, and that dismissal must be reversed.

### 4.

### The Claim of Inadequate Medical Care

The Supreme Court has held that convicted prisoners have an Eighth Amendment right to adequate medical care and that recovery under section 1983 is available for deliberate indifference to their serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). While the Eighth Amendment does not apply to pretrial detainees, this court has held that they are entitled to the same protection as prisoners, and that "it is proper to apply a due process standard which protects pretrial detainees against deliberate indifference to their serious medical needs." *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir.1985). *See also City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) (noting that pretrial detainees have a due process right to medical attention which is "at least as great as the Eighth Amendment protections available to a convicted prisoner"); *see also Dewell v. Lawson*, 489 F.2d 877, 881 (10th Cir.1974).

Meade alleges that he began to experience problems breathing and severe pains in his chest while he was awaiting transfer to the Oklahoma County jail; that he began to feel faint shortly after he arrived at the Oklahoma County jail; that rather than provide medical assistance, however, the deputies assaulted him; that he requested medical care after he was assaulted and the deputies said that such care would be provided; and that "no medical treatment was provided during the entire course of [his] detention." I R. 37.

Meade alleges that the defendants acted with varying degrees of culpability: the deputies (Grubbs and the unidentified deputies referred to as John Doe # 1 and John Doe # 2) acted "deliberately" and "maliciously;" the sheriff (Sharp) and the County Commissioners (Buchanan, Darrell and Snyder) "exhibited a deliberate and wilful indifference in failing to provide [Meade] with proper medical attention;" the Attorney General of Oklahoma (Turpen), Director of the State Department of Human Services (Fulton), and Commissioner of the State Department of Health (Leavitt) acted with "deliberate indifference and/or gross and reckless negligence" with respect to Meade's rights. I R. 37–41.

We hold that the complaint alleges a sufficient claim for relief against Grubbs and the two unidentified deputies in their individual capacities, all of whom allegedly beat Meade, told him that medical attention would be provided, I R. 37, and then "deliberately" and "maliciously" denied him treatment.

We are convinced that Meade's complaint does not state a sufficient claim against any defendants other than Grubb

and the two unidentified deputies in the individual capacities for the denial of medical care. The averments as to Sheriff Sharp and the County Commissioners are merely conclusory allegations such as that they exhibited "deliberate and wilful indifference in failing to provide plaintiff with proper medical attention during his detention." I R. 39. The Sheriff is responsible for making medical care available when necessary to pretrial detainees. Okla.Stat. Ann. tit. 57, § 52 (1987 cum. supp.). The County Commissioners are required to inspect the jails at least once a year and to examine the health of jail conditions. Okla. Stat.Ann. tit. 57, § 1 (1987 cum. supp.). However, there are *no* allegations of any derelictions in these supervisory duties or of general failure to have medical care available. *See Dewell v. Lawson, supra.* The gist of Meade's complaint is the particular refusal of it by Grubbs and the two other deputies. The liability of defendants other than Deputy Grubbs and John Does 1 and 2 would have to rest on the principle of *respondeat superior,* which does not apply. *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

■ We also hold that the complaint does not state a valid claim against Turpen, the Attorney General. Under Oklahoma law, the Attorney General's only authority over medical treatment in county jails arises from his duty to institute civil or criminal actions against other state officials who violate their official duties. *See* Okla.Stat.Ann. tit. 74, § 18b(p) (1987 cum. supp.). As noted below, however, Attorney General Turpen enjoys absolute immunity regarding his refusal to prosecute the other state officials who allegedly deprived Meade of necessary medical care.

■ Similarly, Fulton, the Director of the State Department of Human Services, has no statutory authority regarding the provision of medical care in county jails. Under Oklahoma law, the State Department of Public Welfare must investigate citizen complaints against certain county and state institutions and order an abatement of any wrongful conditions if the complaints are found to be true. Okla. Stat.Ann. tit. 10, § 417 (1987 cum.supp.). However, the Second Amended Complaint did not allege that a citizen complaint was ever filed regarding the Oklahoma County jail and, in any event, county jails are not included among the institutions designated as within the authority of the State Department of Public Welfare. *Cf.* Okla.Stat. Ann. tit. 10, § 416 (1987 cum.supp.) (orphanages); Okla.Stat.Ann. tit. 74, § 174 (1987 cum.supp.) (state eleeomosynary institutions); Okla.Stat.Ann. tit. 74, § 177 (1987 cum.supp.) (orphanages, hospitals and homes). We do not think that the Second Amended Complaint states a valid claim for relief against Director Fulton, in either his individual or official capacity, for inadequate medical care during Meade's detention in the Oklahoma County jail.

■ Finally, the Second Amended Complaint alleged that defendant Leavitt, as Commissioner of the State Department of Health, failed to enforce state standards governing the availability of medical care in county jails, failed to train law enforcement personnel regarding compliance with those standards, and failed to insure the provision of adequate medical care. *See* Okla.Stat.Ann. tit. 74, § 192(a)(11) (1987 cum.supp.); *Dewell v. Lawson, supra.* In light of the allegations made, we hold that while the Eleventh Amendment bars the federal court from awarding damages against Leavitt in her official capacity, the complaint does state a claim on which relief can be granted under § 1983 against her in her individual capacity.

In conclusion, therefore, Meade's complaint concerning the denial of medical care states a claim against Deputy Sheriff Grubbs, John Doe # 1, John Doe # 2 and Leavitt in their individual capacities, and we reverse that ruling. However, the allegation of the denial of medical care against Sharp, Turpen, Fulton, and the County Commissioners, in either their individual or official capacities, fails to state a claim upon which relief can be granted, and we affirm that ruling.

## VI. INDIVIDUAL IMMUNITY

The State defendants, other than Fulton, also argue that they are immune in their individual capacities from liability for damages. Defendants Turpen and Leavitt argue that they are entitled to absolute immunity as the State's Attorney General and Commissioner of the Department of Health. The remaining State defendants—Henslee, Reed, Coffelt, McBride, Mueller and Rayburn—argue that they are entitled to qualified immunity as members of the State's Council on Law Enforcement Education and Training.

### A.

### *Absolute Immunity*

The Supreme Court addressed the parameters of prosecutorial immunity under § 1983 in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

It held that a prosecutor enjoys absolute immunity from damages under § 1983 when he "initiat[es] a prosecution and ... present[s] the State's case." *Id.* at 431, 96 S.Ct. at 995. And although the Court had no occasion to consider whether absolute immunity extends to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate," *id.* at 430–31, 96 S.Ct. at 995, this court has subsequently held that "a prosecutor acting as an investigator has only qualified immunity." *Rex v. Teeples,* 753 F.2d 840, 843 (10th Cir.), *cert. denied,* 474 U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985); *see Harlow v. Fitzgerald,* 457 U.S. 800, 811 n. 16, 102 S.Ct. 2727, 2734 n. 16, 73 L.Ed.2d 396 (1982).

Meade argues that Turpen and Leavitt were not entitled to absolute imunity because they were acting in an investigative, rather than adversarial, capacity when they engaged in the alleged misconduct. We disagree. Although the Court recognized in *Imbler* that the distinction between a prosecutor's investigative and adversarial functions could be elusive, it nonetheless emphasized that preliminary decisions whether to investigate and prosecute a defendant were adversarial in nature:

> We recognize that the duties of the prosecutor *in his role as advocate for the State* involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom. A prosecuting attorney is required constantly, in the course of his duty as such, to make decisions on a wide variety of sensitive issues. These include questions of whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present. Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence.

*Imbler,* 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33 (emphasis added). Consequently, we have held that a prosecutor is absolutely immune from liability for damages based on his failure to independently investigate a suspect's guilt, *Martinez v. Winner,* 771 F.2d 424, 437 (10th Cir.1985), and on his a decision not to prosecute. *Dohaish v. Tooley,* 670 F.2d 934, 938 (10th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed. 2d 63 (1982).

We believe that Turpen's and Leavitt's alleged failure to initiate a civil or criminal complaint against other state officials, and Turpen's decision not to prosecute, fall within the parameters of absolute immunity.[18] *See Wilhelm v. Continental Title Co.,* 720 F.2d 1173, 1177–78 (10th Cir.1983) (holding that Director of the Colo-

---

18. We are mindful of the plaintiff's contention that Leavitt is not entitled to absolute immunity because her duty to initiate a civil complaint is not a prosecutorial function. Reply Brief of Appellant at 8–9. It is true that Leavitt, as the Commissioner of the State Department of Health, does not engage in many of the activities which we ordinarily associate with more traditional "prosecutors" like the Attorney Gen-

eral. However, in determining whether Leavitt is entitled to absolute immunity, we engage in a functional analysis to determine whether her alleged wrongdoing was committed in the course of exercising prosecutorial powers. *See Cleavinger v. Saxner,* 474 U.S. 193, 201, 106 S.Ct. 496, 501, 88 L.Ed.2d 507 (1985); *see also Butz v. Economou,* 438 U.S. 478, 515, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 (1978) ("agency officials

rado Civil Rights Division is entitled to absolute immunity for closing file on an employment discrimination charge because "[t]he adjudicatory and prosecutorial nature of her responsibilities is clear"), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984).

We hold that defendants Turpen and Leavitt are entitled to absolute immunity with respect to their decisions not to initiate criminal or civil proceedings here.

### B.

#### *Qualified Immunity*

 We now turn to the issue of qualified immunity regarding Meade's remaining contentions. Government officials performing discretionary functions are qualifiedly immune from liability as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The issue of "[w]hether the law in question was clearly established when the conduct complained of occurred is a legal issue to be resolved by the court." *Miller v. City of Mission,* 705 F.2d 368, 375 n. 6 (10th Cir.1983).

 We cannot decide the qualified immunity issue raised by the state defendants who are members of the Council on Law Enforcement Education and Training. The qualified immunity is a defense they may raise and it involves factual questions as well. For example, we are unable to ascertain whether a constitutional duty to adequately train law enforcement officers clearly existed when the deputies involved in this case were trained on their employment, or later. These factual questions concerning the defense therefore prevent a ruling at this time whether the CLEET defendants are entitled to a qualified immunity defense.

The remaining issue is whether defendant Leavitt is entitled to a qualified immu-

nity defense which would entitle her to dismissal of the claim of denial of medical care. For the same reasons stated with reference to the CLEET defendants, we cannot uphold a dismissal of the claim of denial of medical care on the basis of a qualified immunity which is a defense implicating factual issues.

### VII. CONCLUSION

In sum, we hold that the district court abused its discretion in dismissing the complaint with prejudice for violation of the local rule. With respect to the alternate ground of dismissal for failure of the complaint to state a claim for relief, without any expression of opinion as to the ultimate merits of the various claims, we affirm in part and reverse in part as stated in this opinion, and remand the case for further proceedings in the district court.

IT IS SO ORDERED.

---

performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts"). In this case, the plaintiff alleged only that defendant Leavitt had failed to initiate a civil complaint with the District Attorney regarding conditions in the county jail. We feel that such an allegation pertains to a prosecutorial function and thus entitles Leavitt to absolute immunity in her individual capacity.