945 F.2d 411
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Edward Lee SCOTT, Denise Scott, individually as parents of
Denice Scott, an unborn but viable child, now
deceased, Plaintiffs-Appellees,
v.
W.B. "Hoppy" DENISON, Defendant-Appellant,
and
City of Idabel, ex rel. Idabel Police Department, Defendants.
 No. 90-7094.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 2, 1991.
 
 Before STEPHEN H. ANDERSON, BARRETT and TACHA, Circuit Judges.
 ORDER AND JUDGMENT*
 TACHA, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiffs commenced this action for damages pursuant to 42 U.S.C. § 1983 in which they alleged that defendant, W.B. "Hoppy" Denison, Police Chief for the City of Idabel, exhibited deliberate indifference to plaintiff Denise Scott's need for medical treatment and proper food such that her unborn baby died due to the starvation of Denise Scott while she was detained in the Idabel City jail prior to trial.[1] Denison appeals from a minute order entered by the district court denying his motion for summary judgment on the ground of qualified immunity. We affirm.
 
 
 3
 Government officials are generally shielded from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "A constitutional right is 'clearly established' if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " Hicks v. City of Watonga, --- F.2d ----, No. 89-6418, slip op. at 27 (10th Cir. Aug. 19, 1991) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).
 
 
 4
 We review a denial of a claim of qualified immunity de novo, Hicks, slip op. at 25, employing the following analysis:
 
 
 5
 If the plaintiff is successful in showing that the law was clearly established and that the defendant's conduct violated the law, then the defendant, as the movant for summary judgment, must demonstrate that no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions.
 
 
 6
 Salmon v. Schwarz, --- F.2d ----, No. 88-1850, slip op. at 9 (10th Cir. Aug. 27, 1991); see also Martin v. Board of County Comm'rs, 909 F.2d 402, 405 (10th Cir.1990).
 
 
 7
 We have held that "[p]retrial detainees are entitled under the fourteenth amendment's due process clause to the same degree of protection regarding medical attention afforded convicted inmates under the eighth amendment." Martin, 909 F.2d at 406; see also Bell v. Wolfish, 441 U.S. 520, 545 (1979) ("[P]retrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners."); Meade v. Grubbs, 841 F.2d 1512, 1530 (10th Cir.1988) (same). Therefore, Scott's claim of inadequate medical care and lack of proper food must be judged under the clearly established constitutional standard of "deliberate indifference to serious medical needs" as set forth in Estelle v. Gamble, 429 U.S. 97, 104 (1976). See Martin, 909 F.2d at 406. Deliberate indifference "must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). "[A]n official ... acts with deliberate indifference if [his] conduct ... disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." Berry v. City of Muskogee, 900 F.2d 1489, 1496 (10th Cir.1990).
 
 
 8
 Here, the facts, considered in the light most favorable to the plaintiff, see Ewing v. Amoco Oil Co., 823 F.2d 1432, 1437 (10th Cir.1987), show that on May 9, 1989, Denise Scott, who was seven months pregnant, was arrested by City of Idabel police officers on the basis of outstanding felony warrants out of California. As she was being booked into the jail, a loaded .22 caliber pistol, a bag of marijuana, and rolling papers were found in her possession. Additional municipal charges were later filed based on these violations. Four hours after being booked, Scott requested medical attention claiming that she was spotting and vomiting. Appellant's App. at 87. Two days later, Scott again requested medical attention claiming she had not eaten for two days due to the vomiting, was continuing to spot, and could not feel the baby move. Id. at 88. Scott was taken to a hospital. There, the doctor determined that the baby was alive and well. Scott refused intravenous fluids and was taken back to the jail. She was given a prescription for nausea which was not filled.
 
 
 9
 Scott continued to vomit and was unable to eat the beans, cheese, and cornbread provided as the regular diet for inmates. She repeatedly asked to see a doctor. At least once, maybe twice, Denison instructed officers to place Scott in the "drunk tank" because she was creating a disturbance and destroying city property. Id. at 200. Scott stated she was begging for medical attention at the time by screaming to see a doctor and throwing toilet paper or parts of her mattress out of her cell. Id. at 107. No further medical care was provided Scott after her visit to the hospital on May 11. Denison stated that he was solely responsible for determining whether an inmate needed medical care in nonemergency situations. Id. at 123. Any dispatcher or officer could authorize emergency care. Id. at 124.
 
 
 10
 When Scott made her third appearance before a judge on May 22, 1989, she was weak and unable to stand. The judge ordered that she be taken to the county health department for medical care. The health department transferred her to a hospital. When she arrived, she had no blood pressure and was having periods of apnea (not breathing). Her "life was in danger." Id. at 191. Her condition was stabilized and labor was induced. The baby was stillborn. It was determined she had died in utero three days earlier. The cause of death was given as hypoxia (lack of oxygen) due to maternal starvation and renal failure. Id. at 192, 241.
 
 
 11
 Two jailors testified by deposition that they were concerned about Scott's health and the health of her baby and had told their supervisor of their concerns on a daily basis. Id. at 207, 227. The supervisor testified that he always told his supervisor or Denison about the jailors' concerns. Id. at 233. At one point the jailers took the state jail inspector to her cell admittedly "more or less in an attempt to cover [their] own tails." Id. at 214. The inspector reportedly told them they would have "a problem if we didn't get her out of there." Id.
 
 
 12
 Denison testified by deposition that he was aware Scott was not eating, id. at 203, and knew that her failure to eat could become a health problem, id. at 271, but thought Scott could go a week to ten days without food without endangering the baby because it takes two weeks to starve to death, id. at 201. He did not remember if he had been told Scott needed medical attention. Id. at 203. Denison stated he believed Scott was all right and did not believe that her life was in danger although he was concerned about her health and told the jailers to keep watch on her condition at least hourly. Id. at 129-131. He testified that he believed Scott was intentionally refusing to eat. Id. at 271.
 
 
 13
 Scott's allegations, including the failure to have her prescription filled, implicate serious medical concerns which "cannot be characterized as involving either simple inadvertence or a mere difference of professional medical opinion" regarding her care. Martin, 909 F.2d at 406.
 
 
 14
 The affidavits and depositions submitted by the parties raise factual issues as to whether Denison deliberately disregarded the information he received regarding Scott's condition. Further, Denison has failed to show his actions were objectively reasonable in light of the clearly established law as set forth in Gamble. Scott clearly has alleged and substantiated a sufficient claim of deliberate indifference to her serious medical needs to withstand Denison's motion for qualified immunity.
 
 
 15
 The judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED. Denison's "Application for Oral Argument" is DENIED.
 
 
 16
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3.
 
 
 
 [1]
 Plaintiffs asserted other claims against Denison and the City of Idabel. These claims are not at issue in this appeal