Josette **WEIMER, Individually and as Administratrix of the Estate of Thomas L. Weimer, Sr., Deceased; Thomas L. Weimer, Jr.; Jason Weimer; Andrew Weimer; all Minors By and Through their Mother and Next Friend, Josette Weimer, Plaintiffs–Appellants,**

v.

Christine **SCHRAEDER; Robert Liebner; David Bredahl; City of Greenwood Village, Colorado, Defendants–Appellees,**

and

**Abdurahman Said; Ghebro Getaun, Defendants.**

No. 91–1050.

United States Court of Appeals, Tenth Circuit.

Dec. 17, 1991.

Nicholas F. Maniscalco, Chicago, Ill., for plaintiffs-appellants.

Thomas J. Helms, Montgomery Little Young Campbell & McGrew, P.C., Englewood, Colo., and Louis Bruno, Bruno, Bruno & Colin, P.C., Denver, Colo., for defendants-appellees David J. Bredahl and Robert E. Liebner.

Alan Epstein and Daniel R. Satriana, Jr., Hall & Evans, Denver, Colo., for defendant-appellee City of Greenwood Village.

Before ANDERSON, BARRETT and BRORBY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

The Plaintiffs in this action, the wife and children of the decedent Thomas L. Weimer, Sr., filed suit in federal district court against Defendants Robert E. Liebner and David J. Bredahl, Greenwood Village police officers, and the City of Greenwood Village, Colorado, under 42 U.S.C. § 1983.[1] Plaintiffs claim various constitutional violations under the Fourth, Fifth, and Fourteenth Amendments in relation to the circumstances surrounding the death of the decedent.[2] The defendant police officers, Liebner and Bredahl, raised the affirmative defense of qualified immunity. All Defendants filed a motion for summary judgment which the district court granted as to all claims. Plaintiffs appeal.

Decedent was a passenger in a taxi which was involved in an accident on an off-ramp of I–25 in Denver. The defendant police officers were involved in the investigation of the accident. At the time the police officers arrived at the scene, they were informed by another officer, already present, that decedent was acting "nervous" and "suspicious" and appeared to be intoxicated.[3] Decedent had apparently tried several times to leave the scene of the accident and walk on the off-ramp to a nearby Holiday Inn. The police officers requested that he remain at the scene for his own safety as well as because his presence was necessary as a witness to the accident.

When the officers requested identification from decedent, the only identification he could produce was a crumpled social security card. The officers then ran a check on him through the Colorado Crime Information Center, and learned he was wanted on an outstanding shoplifting warrant in Arapahoe County. The officers proceeded to arrest decedent pursuant to

---

1. Christine Schraeder was also named as a defendant in the district court action, but has been dismissed from the appeal pursuant to the motion of Appellants and subsequent Order of this court filed on June 13, 1991.

2. Plaintiffs also claim negligence of Defendants, but because a claim for negligence is unavailable under § 1983, we review Plaintiffs' claims

only for a determination of whether decedent's constitutional rights were violated. *See Archuleta v. McShan,* 897 F.2d 495, 497 (10th Cir.1990).

3. The autopsy report indicates that decedent had a blood alcohol level of 0.16% at the time of death. App. at 72.

the warrant. They conducted a pat-down search, handcuffed him and placed him, along with his suitcase, in the back seat of the squad car. The officers then returned to their responsibilities regarding the accident. The record indicates that during the period of less than thirty minutes that decedent waited in the squad car, Officer Liebner returned to the car several times to radio messages to the station.

After the officers began to transport decedent to the station, he announced that he was ill and was going to "throw up." The officers requested that he "hang on" as they were almost at the station. Decedent subsequently began to vomit. The officers radioed the station informing them of decedent's condition and requesting assistance upon arrival. Upon reaching the station, it became apparent that decedent's illness was more than a reaction to too much alcohol. The officers then called the paramedics from the Castlewood Fire Rescue Department who arrived within minutes. At this point decedent appeared to be unconscious and was having respiratory problems.

The officers claim, and Plaintiffs do not refute, that only eleven minutes elapsed between the time they began to transport decedent from the accident scene to the station (10:17 p.m.) and the time the paramedics arrived to attend to decedent's needs (10:28 p.m.). The paramedics transported decedent to Swedish Hospital where he died several hours later.

When the officers commenced to clean up the back seat of their squad car, they discovered a bag shoved under the seat which contained traces of cocaine. The officers contend that this was their first indication that decedent possibly had ingested cocaine, which had caused his severe physical symptoms.[4]

■ This court reviews a grant of summary judgment de novo, applying the same legal standards used by the district court pursuant to Fed.R.Civ.P. 56(c). *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990) (citing *Barnson v. United States*, 816 F.2d 549, 552 (10th Cir.), *cert. denied*, 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987)). We resolve all factual disputes and draw all inferences in favor of the nonmoving party. *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 979 (10th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991).

■ The standard for evaluating qualified immunity claims was articulated by the Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Recently the Supreme Court reiterated and clarified its holding in *Harlow* by stating: "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time [the action] was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738–39; *see also Dixon v. Richer*, 922 F.2d 1456, 1459–60 (10th Cir.1991). The burden rests on Plaintiffs to prove that there was a clearly established law. *Hilliard v. City & County of Denver*, 930 F.2d 1516, 1518 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 656, 116 L.Ed.2d 748 (1991); *see also Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir.1990) (plaintiff must demonstrate that the laws allegedly violated by the police officers were clearly established).

In their brief, Plaintiffs aver that "[t]he standard of conduct of the law enforcement officials should be analyzed, not only under the *Fourth Amendment*, but also under the substantive due process standard as

---

**4.** The autopsy report indicates that decedent had a concentration of thirteen micrograms of cocaine per milliliter of blood, a toxicity level which would be considered lethal. App. at 77.

guaranteed by the *Fifth* and *Fourteenth* Amendments." Appellant's Brief at 8. This is where Plaintiffs' argument ends. Although the Supreme Court recognized that constitutional rights are clearly established, the test of qualified immunity cannot be applied at "this level of generality." *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038. The right must be established in a more particularized and relevant sense. *Id.* at 640, 107 S.Ct. at 3039. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.; see also Hilliard,* 930 F.2d at 1518 ("[T]he plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it."). "[B]road, nonspecific allegations are insufficient to defeat the [defendant police officers'] claim to qualified immunity." *Id.* at 1521.

■ In *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989), the Supreme Court held that *"all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *See also Culver v. Town of Torrington,* 930 F.2d 1456, 1460 (10th Cir.1991).[5] There appears to be no resolution of the question of whether the Fourth Amendment continues its protection past the arrest point. *Graham,* 490 U.S. at 395 n. 10, 109 S.Ct. at 1871 n. 10. It appears clear, however, that following arrest the due process protections of the Fourteenth Amendment are triggered to protect a pretrial detainee from excessive force approaching punishment. *Id.* A negligent act evincing only a lack of due care by a government official, however, does not warrant Fourteenth Amendment protections. *See Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986).

Although Plaintiffs do not claim that the police officers engaged in excessive force, they do claim that the officers effected an illegal seizure by preventing decedent from leaving the scene of the accident. The police officers admit that they requested that decedent remain at the scene for decedent's own protection as he appeared to be intoxicated, and because they feared for his safety if he was allowed to walk on a highway off-ramp. They also contend that his presence as an accident witness was necessary in order to complete their investigation and report of the accident.[6]

■ In order to constitute a "seizure," the police officers must have restrained decedent's liberty "by means of physical force or show of authority." *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). Plaintiffs offer no facts to support a contention that the police officers used any physical or authoritative force in preventing decedent from leaving the scene prior to his arrest. The Fourth Amendment does not protect citizens from all seizures, only from those that are unreasonable. *Id.* at 9, 88 S.Ct. at 1873. Consequently, even if we assume that decedent may have felt he was being restrained by the authority of the officers, under the circumstances, we conclude that the actions of the police officers were reasonable, made in good faith, and did not violate his constitutional rights.

■ It appears that decedent removed the cocaine from his suitcase and ingested it while waiting in the squad car. Plaintiffs allege that the police officers denied decedent due process of law by placing his

---

**5.** The Eighth Amendment's proscription against cruel and unusual punishment is only applicable following a " 'determination of guilt after a trial or plea ...' " *Berry v. City of Muskogee,* 900 F.2d 1489, 1493 (10th Cir.1990) (quoting *Bell v. Wolfish,* 441 U.S. 520, 536 n. 17, 99 S.Ct. 1861, 1872 n. 17, 60 L.Ed.2d 447 (1979)).

**6.** As Defendants point out, in Colorado, it is illegal to walk on the portion of a highway used for traffic if you are intoxicated or under the influence of a controlled substance. Colo.Rev. Stat. § 42–4–705(3). In addition, the police officers at the accident scene had a duty to prepare an accurate accident report including interviews with available witnesses. *Id.* § 42–4–1406(4).

suitcase in the squad car with him in violation of proper police procedures. Plaintiffs' only support for this allegation is an affidavit from a retired Chicago police officer stating that, in his opinion, it was inappropriate for the officers to do so. App. at 134. This attestation has no basis in law or fact and is unpersuasive.

Plaintiffs have presented no evidence that the police officers engaged in any improper, unreasonable, or prohibited action, or failed to react appropriately to the circumstances. Consequently, it is our ultimate determination that Plaintiffs have failed to make a sufficient factual showing under either the Fourth or the Fourteenth Amendment standard. Plaintiffs have failed to meet their burden of showing that any of the actions of the officers were in cognizant violation of established law. Consequently, the defendant police officers, Liebner and Bredahl, are entitled to qualified immunity, and the grant of summary judgment is proper.

Plaintiffs further argue that the City of Greenwood Village is liable under § 1983 for its alleged failure to adequately train its police officers in deliberate indifference to the constitutional rights of its citizens. The Supreme Court, in *Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), held that municipalities could be held liable under § 1983 if

> the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

The Supreme Court further refined its *Monell* decision in *Pembaur v.*

*City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986), by holding that in order to affix liability to a municipality under § 1983, the alleged unconstitutional acts must be committed by an official possessing final policymaking authority with respect to the alleged acts. The offensive policy must emanate from an officially promulgated decision or from a practice which is well-settled and permanent. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. In addition, there must be a showing that the policies of the municipality were directly connected to the constitutional deprivation. *Berry*, 900 F.2d at 1499.

A city's liability for failure to adequately train its police officers is triggered only when the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). Under the facts presented here, we conclude that Plaintiffs failed to show that the City of Greenwood Village violated decedent's due process rights through a policy or custom reflective of deliberate indifference to the rights and safety of its citizens.

In conclusion, we tend to agree with Defendants that decedent's death, although very unfortunate, was a result of his own actions and cannot be adjudged the responsibility of these Defendants. Even accepting all of Plaintiffs' factual allegations as true, we are still disposed to agree with the district court's decision that Plaintiffs have failed to show that the actions engaged in by the police officers were in violation of clearly established law, or unreasonable under the circumstances.

Plaintiffs have failed to present sufficient evidence to create a genuine issue of material fact, and therefore, the district court's grant of summary judgment was appropriate. The judgment of the United States District Court for the District of Colorado is AFFIRMED.