991 F.2d 805
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Merrill Burrous CHAMBERLAIN, Plaintiff-Appellant,
v.
CITY OF ALBUQUERQUE; Ken Shultz, Mayor; Sam Baca, Chief of
Police; J.G. Gallegos, Sgt.; John A. Carillo,
Officer; John Messimer, Defendants-Appellees.
 No. 92-2089.
 United States Court of Appeals, Tenth Circuit.
 March 29, 1993.
 
 Before LOGAN, MOORE and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Mr. Chamberlain, a pro se litigator, appeals the dismissal of his 42 U.S.C. § 1983 complaint.
 
 
 3
 Mr. Chamberlain was tried, convicted and sentenced on criminal charges arising out of the circumstances basically described by Mr. Chamberlain in his complaint, which the district court summarized as follows:
 
 
 4
 On February 21, 1987, Albuquerque Police Department (APD) received a[ ] call from a woman who claimed that Plaintiff was physically assaulting her. The woman called APD from Plaintiff's home. Upon the arrival of Officers Messimer and Carrillo at the address, Plaintiff agreed to a search of his home. During the search, Carrillo received APD's confirmation that the emergency call did originate from Plaintiff's address. Carrillo also discovered evidence of the recent presence of a woman in a bedroom in the house. The officers requested to search again. Plaintiff declined to consent to a further search and requested the presence of his lawyer. Carrillo and Messimer permitted Plaintiff to go upstairs and use the telephone to call his lawyer but continued to search the house. At some point, Plaintiff retrieved a briefcase with a gun in it. Carrillo and Messimer permitted Plaintiff to go into the bathroom unescorted, to which he carried the briefcase with the hidden gun. When Plaintiff attempted to leave the bathroom, Carrillo blocked his exit and held a gun leveled at Plaintiff's chest. Shortly thereafter, Plaintiff engaged the officers in a gun battle in which Carrillo was shot to death.
 
 
 5
 Mr. Chamberlain filed this pro se action against the City of Albuquerque, its police department and various officers claiming the violation of his constitutional rights originating in the above described circumstances.[1] Specifically, plaintiff contended that his Fourth, Fifth and Sixth Amendment[2] rights were violated during the incident.
 
 
 6
 The district court, in a thorough and well written twenty-four-page Memorandum Opinion and Order filed on April 10, 1992, dismissed the complaint. We attach a copy of this Memorandum Opinion and Order hereto. On September 28, 1992, pursuant to Fed.R.Civ.P. 60(b)(1) and (b)(6), plaintiff filed a motion for relief from judgment. The district court found on October 7, 1992 that it was without jurisdiction to consider the motion since plaintiff had already appealed.
 
 
 7
 It is difficult to either characterize or summarize Mr. Chamberlain's brief to this court accurately. The essence of the appeal is that the district court made erroneous factual findings "that contradict the substantive facts known to both officers." Additionally, Mr. Chamberlain petitioned for a writ of mandamus to compel consideration of his Rule 60(b) motion.
 
 
 8
 Regarding dismissal, the district court liberally construed Mr. Chamberlain's pleadings and viewed them in the appropriate light: " '[A]ll well-pleaded facts, as distinguished from conclusory allegations, must be taken as true,' Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir.1984)." The district court concluded Mr. Chamberlain could prove no set of facts in support of his claim that would entitle him to relief. We review the dismissal for failure to state a claim de novo. Miller v. Glanz, 948 F.2d 1563, 1565 (10th Cir.1991).
 
 
 9
 In regard to the excessive force claim, the officers' conduct even according to plaintiff's facts was objectively reasonable. See Graham v. Connor, 490 U.S. 386, 396 (1989). Allegations such as "both officers agreed to allow me to enter my bathroom alone"; "one [officer] was not wearing a bullet-proof vest"; "one [officer] left the room of the other five times"; "instead of leaving me alone in my bathroom the second time, he could have continued eye contact," do not constitute facts showing excessive force. We agree with the district court that any alleged seizure was justified by the legitimate interests of minimizing the risk of harm to the officers and other potential occupants, and the facilitation of the orderly completion of the search. See Michigan v. Summers, 452 U.S. 692, 702-03 (1981). Further, plaintiff has alleged no facts that would indicate an interrogation took place in violation of his Fifth Amendment rights. An interrogation requires the officers to make statements which would be "reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301 (1990). Finally, because plaintiff has failed to state a claim for a constitutional violation by a police officer, there can be no action against the officer's supervisors for failing to train or supervise the officer. Apodaca v. Rio Arriba County Sheriff's Dept., 905 F.2d 1445, 1447 (10th Cir.1990).
 
 
 10
 Mr. Chamberlain's numerous other arguments do not warrant discussion. Mr. Chamberlain has failed to persuade us that he has stated a claim for which relief may be granted.
 
 
 11
 Mr. Chamberlain's petition for writ of mandamus to direct the district court to consider his Rule 60(b) motion must also be denied. Technically, the district court was incorrect in its Order of October 7, 1992, when it stated it did not have jurisdiction to consider the Rule 60(b) motion. Actually, the district court lacks jurisdiction only to grant a Rule 60(b) motion once an appeal has been filed. Aldrich Enters., Inc. v. United States, 938 F.2d 1134, 1143 (10th Cir.1991). The court was free to consider the motion and then deny it on its merits, or it could notify us of its intention to grant the motion upon remand. Id. The issues raised by Mr. Chamberlain's Rule 60(b) motion, however, were addressed in the court's Memorandum and Order of April 10, 1992. In Plaintiff's Rule 60(b) motion he requests leave to replace "Section C. Cause of Action," in the complaint with eight pages of reworded claims containing many conclusory allegations. A motion under Rule 60(b) must present a matter that is material and of such importance that it would likely alter the outcome. Id. Excluding the conclusory allegations, none of the actual facts brought forth in Mr. Chamberlain's motion state a claim for which relief may be granted.
 
 
 12
 The judgment of the district court is AFFIRMED for substantially the same reasons set forth therein, and the writ of mandamus is DENIED. The mandate shall issue forthwith.
 
 ATTACHMENT
 
 13
 IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO
 
 
 14
 MERRILL BURROUS CHAMBERLAIN, Plaintiff,
 
 
 15
 vs.
 
 
 16
 CITY OF ALBUQUERQUE, et al., Defendants.
 
 No. CIV 89-0101 M/SGB
 APRIL 10, 1992
 MEMORANDUM OPINION AND ORDER
 
 17
 This matter comes before the court pursuant to Defendants' various motions to dismiss and George Carrillo's Suggestion of Death and accompanying motion to substitute parties.
 
 I. SUMMARY OF CASE
 
 18
 This is a pro se civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding in forma pauperis.
 
 
 19
 On February 21, 1987, Albuquerque Police Department (APD) received an call from a woman who claimed that Plaintiff was physically assaulting her. The woman called APD from Plaintiff's home. Upon the arrival of Officers Messimer and Carrillo at the address, Plaintiff agreed to a search of his home. During the search, Carrillo received APD's confirmation that the emergency call did originate from Plaintiff's address. Carrillo also discovered evidence of the recent presence of a woman in a bedroom in the house. The officers requested to search again. Plaintiff declined to consent to a further search and requested the presence of his lawyer. Carrillo and Messimer permitted Plaintiff to go upstairs and use the telephone to call his lawyer but continued to search the house. At some point, Plaintiff retrieved a briefcase with a gun in it. Carrillo and Messimer permitted Plaintiff to go the bathroom unescorted, to which he carried the briefcase with the hidden gun. When Plaintiff attempted to leave the bathroom, Carrillo blocked his exit and held a gun leveled at Plaintiff's chest. Shortly thereafter, Plaintiff engaged the officers in a gun battle in which Carrillo was shot to death.
 
 
 20
 Plaintiff claims violations of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments; all of which claims originate in the circumstances surrounding his arrest in his home. Plaintiff names as defendants the City of Albuquerque, former mayor Ken Schultz, Police Chief Sam Baca, Police Sergeant John B. Gallegos, and unknown policy makers (collectively referenced in this opinion as "City defendants"), as well as Officers Carrillo and Messimer.
 
 
 21
 Plaintiff alleges that Carrillo and Messimer, the officers at the scene of the arrest, and Defendant Gallegos, their immediate supervisor, violated his right to be free from unreasonable seizure. Plaintiff complains that City defendants violated his substantive due process rights by failing to adequately train or supervise Carrillo and Messimer. Plaintiff alleges that Carrillo and Messimer violated his rights under the Fourth, Fifth, and Sixth Amendments when they continued to interrogate him and search his house after he had requested the presence of an attorney and his subsequent behavior which culminated in the gun battle in which Carrillo lost his life. Finally, Plaintiff alleges that the repeated search demonstrates the City defendants' inadequate training or supervision of Carrillo and Messimer.
 
 
 22
 In their Answer, all defendants except Carrillo move the court to dismiss this case for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. George Carrillo, the personal representative of the estate of Defendant Carrillo, has moved the court for the substitution of the estate as party defendant. Carrillo has also moved to dismiss the claim against the estate on the ground that the claim is barred by the applicable statute of limitations.
 
 
 23
 I have reviewed the complaint, Defendants' Answer and accompanying memorandum in support of their motion to dismiss (Defendants' motion), Carrillo's motion to substitute parties and to dismiss and supporting memorandum (Carrillo's motion), and Plaintiff's memoranda filed in opposition to the defendants' two motions.
 
 
 24
 I have construed the pro se plaintiff's pleadings liberally, holding him to a less stringent standard than that required of a party represented by legal counsel. See, e.g., Gillihan v. Shillinger, 872 F.2d 935, 938 (10th Cir.1989). While applying the standard for considering a 12(b)(6) motion that "[a]ll well-pleaded facts, as distinguished from conclusory allegations, must be taken as true," Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir.1984) (citation omitted), I have remained mindful that a constitutional claim brought by a pro se plaintiff under Section 1983 should not be dismissed unless it appears beyond a doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. Dunn v. White, 880 F.2d 1188, 1190 (10th Cir.1989), (citations omitted), cert. denied, 493 U.S. 1059 (1990).
 
 II. DISCUSSION AND ANALYSIS
 
 25
 Because Count I is premised in the theory that the City defendants' failed to provide Carrillo and Messimer training adequate to avoid the Constitutional violations alleged in Count II of the Complaint, I will consider Count II first.
 
 A. Count II: Excessive Force
 
 26
 Plaintiff claims that, by unnecessarily maintaining a threat of deadly force, Carrillo violated his right to be secure in his home and person against unreasonable seizure. As support, Plaintiff alleges that Carrillo prevented him from leaving his bathroom by pointing a gun at his chest despite his raised and empty hands; that Carrillo held the gun on Plaintiff because Plaintiff had been out of sight when he was permitted to use the bathroom; that Carrillo continued to threaten Plaintiff's life for a "considerable time;" and that Messimer did not come to Plaintiff's aid.
 
 1. Defendant Gallegos
 
 27
 Plaintiff names Gallegos as a defendant in Count II of his complaint, and describes Gallegos as the immediate supervisor of Carrillo and Messimer. As Gallegos is also named as a defendant in Count I, which specifically involves a claim for inadequate supervision and training, I interpret his inclusion in Count II to be premised in something other than a claim for failure to train and supervise. That claim under Count I will be considered below.
 
 
 28
 Liability under Section 1983 cannot rest upon a theory of respondeat superior. See, e.g., City of Canton v. Harris, 489 U.S. 378, 385 (1989). Absent personal participation, supervisory personnel are not liable for civil rights violations perpetrated by individual police officers unless the plaintiff demonstrates an "affirmative link" between the incident of police misconduct and the adoption of a plan or policy showing authorization or approval of the misconduct. See, e.g., D.T. by M.T. v. Independent School District No. 16, 894 F.2d 1176, 1187 (10th Cir.) cert. denied, --- U.S. ----, 111 S.Ct. 213 (1990) ( quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)). Superior officers who have no affirmative link with Constitutionally-proscribed misconduct cannot be held liable under Section 1983. McClelland v. Facteau, 610 F.2d 693, 695-96 (10th Cir.1979). To hold a superior liable for the acts of an inferior, the superior "must have participated or acquiesced in the constitutional deprivations." Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir.1988) (citation omitted).
 
 
 29
 Barring evidence that Gallegos personally established or used an unconstitutional policy or custom, which has not been alleged, Plaintiff must aver facts sufficient to support a determination that Gallegos "breached a duty imposed by state or local law which caused the constitutional violation." Id. Plaintiff has not alleged such facts. Moreover, Plaintiff has alleged neither that Gallegos had any duty or authority to hire, train, supervise or discipline Carrillo and Messimer, (see, id., at 1528-29,) nor that any specific deficiencies in Gallegos's performance actually caused the purported constitutional injury in this case. See, e.g., Munz v. Ryan, 752 F.Supp. 1537, 1549 (D.Kan.1990). The instant case differs dramatically from Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553 (1st Cir.1989), which Plaintiff cites in his response to the City defendants' motion to dismiss. In Cartagena, the court held a police superintendent liable for civil rights violations when the superintendent had personal knowledge of numerous complaints specifically against the officer in question, had taken no action, and had employed an inadequate disciplinary system permitting the officer to continue his improper practices. Id. at 561-569. Plaintiff has alleged no fact which could support a conclusion that either Carrillo or Messimer had any history of violations or that Gallegos had in any way breached any duty or responsibility required of him by law. Cf., Meade v. Grubbs, 841 F.2d at 1527-29.
 
 
 30
 The complaint contains no allegation of fact demonstrating an affirmative link between Gallegos, in his personal capacity, and the alleged deprivation of Plaintiff's constitutional rights. Plaintiff's sole allegation specifically in reference to Gallegos is that he was the immediate supervisor of the officers who purportedly violated Plaintiff's rights. This conclusory allegation fails to state a claim for federal court relief. See, e.g., Williams v. Meese, 926 F.2d 994, 998 (10th Cir.1991).
 
 
 31
 Construed as a suit against Gallegos in his official capacity, this action constitutes a claim against the City of Albuquerque. See, e.g., Meade v. Grubbs, 841 F.2d at 1529. In this context, Plaintiff must allege that Gallegos was responsible for establishing the City's policy regarding the use of force in circumstances such as those giving rise to this lawsuit. Id. at 1530. Plaintiff has not alleged any such facts, and therefore fails to state a claim against Gallegos in his official capacity.
 
 
 32
 The "broad reading" to which Plaintiff's pleadings are entitled does not relieve him "of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991). I find no factual averment sufficient to establish that Gallegos is a proper defendant in a Section 1983 lawsuit premised on the allegations that Carrillo used excessive force in the arrest of Plaintiff. Gallegos will be dismissed as a defendant under Count II.
 
 2. Defendants Carrillo and Messimer
 
 33
 Count II of the complaint alleges a claim of excessive force in violation of the Fourth Amendment. The threshold requirement of such a claim is the establishment of a "seizure." See, e.g., Brower v. County of Inyo, 489 U.S. 593, 596 (1989). Plaintiff must allege that Defendants sought to restrain his liberty 'by means of physical force or show of authority." Weimer v. Schraeder, 952 F.2d 336, 340 (10th Cir.1991) (quoting Terry v. Ohio, 382 U.S. 1, 19 n. 16 (1968)). The question is whether Defendants intended the force or authority to terminate Plaintiff's freedom of movement and then succeeded in doing so. Browyer, 489 U.S. at 598-99. For purposes of Defendants' motion, I assume without deciding that Plaintiff has alleged sufficient facts to establish a "seizure" for purposes of articulating a claim under the Fourth Amendment.
 
 
 34
 Only unreasonable seizures, however, are proscribed by the Fourth Amendment. See id., 489 U.S. at 599, 109 S.Ct. at 1382; Weimer, 952 F.2d at 340. A detention amounting to a Fourth Amendment "seizure" may still be Constitutionally permissible. See, e.g., Michigan v. Summers, 452 U.S. 692 (1981) (warrant to search home for contraband found to authorize limited detention of occupants). Even a warrantless entry of a home, justifiable because of the exigency of the circumstances, may provide police officers with a constitutionally permissible basis for a temporary seizure of the house's residents. Id. at 703 n. 17. Here, Plaintiff himself alleges that Carrillo and Messimer were summoned to Plaintiff's home by a woman who reported that Plaintiff was beating her. Plaintiff also acknowledges that the officers entered and searched his home lawfully, pursuant to his permission. Plaintiff states that during the search Carrillo found evidence of a woman's presence in the house. Plaintiff's own version of the facts support the conclusion that the officers' interest was in finding the missing woman who might be concealed and injured. See United States v. Riccio, 726 F.2d 638, 643 (10th Cir.1984) (4th amendment does not bar warrantless entry when officer has reasonable belief that a person is in need of aid).
 
 
 35
 Plaintiff's allegations demonstrate that the alleged seizure in question--that period of time in which Carrillo held a gun aimed at Plaintiff's chest--lasted something under sixty seconds. Plaintiff alleges that the seizure occurred after Carrillo left the bathroom, stating, "It's not my house," and before the first gun shot. According to Plaintiff, he attempted to follow Carrillo from the bathroom but Carrillo prevented his exit by holding a gun aimed at his chest. Plaintiff himself acknowledges that a tape recording of the incident establishes that only sixty seconds transpired between Carrillo's statement before leaving the bathroom and the initial gunfire. Consequently, Plaintiff is complaining of a less than sixty second "seizure" prior to the gun battle in which Carrillo was shot to death. While even a brief seizure and pat-down search is a "severe ... intrusion upon cherished personal security," Terry v. Ohio, 392 U.S. at 24-25, Carrillo's abbreviated seizure of Plaintiff was justified because circumstances required "necessarily swift action predicated upon [Carrillo's] on-the-spot observations," id. at 20, particularly when weighed against Carrillo's "need to protect [himself] and other prospective victims of violence." Id. at 24. As Carrillo's and Messimer's entry and initial search were lawful, by virtue of Plaintiff's consent, the Fourth Amendment permits the limited seizure at issue. See Michigan v. Summers, 452 U.S. at 705 n. 21.
 
 
 36
 Moreover, the permissibility of a particular use of force is measured by the Fourth Amendment's "objective reasonableness" standard. See, e.g., Culver v. Town of Torrington, Wyoming, 930 F.2d 1456, 1460 (10th Cir.1991). Actual physical contact is not a necessary component of a claim for unreasonable force. Martin v. Board of County Commissioners, 909 F.2d 402, 406 (10th Cir.1990) ( citing Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989)). Nonetheless, a plaintiff must demonstrate that the amount of force used was "sufficiently egregious to be of Constitutional dimensions." Id. at 407 ( citing Wise v. Bravo, 666 F.2d 1328, 1335 (10th Cir.1981). A court must consider the extent of the injury inflicted by the use of force when evaluating a claim of unreasonable force. Id.
 
 
 37
 Even assuming for purposes of this motion that Plaintiff was not yet resisting arrest at the time in question, his allegations of the force used, absent any allegation of injury, are not so unreasonable as to give rise to a claim under the Fourth Amendment. See Foster v. Metropolitan Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir.1990). Plaintiff relies heavily on a decision of the Third Circuit ( Black v. Stephens, 662 F.2d 181 (3rd Cir.1981), cert. denied, 455 U.S. 1008 (1982)) as authority for the proposition that Carrillo's mere holding a gun aimed at his chest can constitute excessive force. In Black the Court found that for an officer to brandish his revolver near the plaintiff's head with plaintiff's wife in the precise line of fire and then threaten to shoot shocked the conscience so as to rise to the level of constitutional violation. Id. at 188. Plaintiff alleges no facts that would support a finding of unconscionable behavior.
 
 
 38
 The mere threat of force, while perhaps intimidating, is not excessive force. Navratil v. Parker, 726 F.Supp. 800, 803 (D.Colo.1989). Even a "grossly excessive demonstration of manpower and firepower," with no actual use of force and no resulting injury or harm, is not actionable under Section 1983. Gumz v. Morrissette, 772 F.2d 1395, 1401 (7th Cir.1985), cert. denied, 475 U.S. 1123 (1986). In response to the City defendants' motion, Plaintiff claims that Carrillo's threatening behavior "precipitated [Plaintiff's] subsequent conduct and the gun battle in [his] master bedroom that caused [Carrillo's] tragic death and the subsequent trials." (Plaintiff's Memorandum Opposing Defendants' Motion to Dismiss at 7 [Plaintiff's Response].) Plaintiff maintains that Carrillo's death and his own "instinctual reaction to survive caused by [Carrillo's] terrorizing threat" triggered great emotional trauma and suffering, as well as mental anguish. (Plaintiff's Response at 7.) Accepting these assertions as true, I conclude that they are insufficient, without more, to support a claim of excessive force. Merely stating that a seizure involved excessive force does not entitle even a pro se plaintiff to the attention of a federal court, regardless of the requirement to liberally construe the complaint. Conclusory claims of a constitutional violation, unsupported by the facts alleged, must be dismissed. See, e.g., Cotner v. Hopkins, 795 F.2d 900, 902 (10th Cir.1986).
 
 
 39
 Even if Plaintiff were to establish a claim against Carrillo for an unreasonable seizure, his allegations would be insufficient to state a claim against Messimer. Plaintiff cites Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553 (1st Cir.1989) as authority for holding Messimer liable for failing to intervene, alleging that Messimer "stood idly by and failed to perform his duty to stop this unlawful seizure." (Plaintiff's Response at 2.) In Cartagena, squad members who had actively participated in the deprivation of civil rights were attempting to avoid liability by arguing that they had not fired the bullet that actually injured the individual. Id. at 560-61. The court found that all four officers who participated in the incident could be found liable because the injury was foreseeable and the fact "[t]hat only one bullet found its mark was fortuitous, not exculpatory." Id. at 561. Here, Plaintiff has alleged no fact that would reasonably support the inference that Messimer was an active participant in the alleged offensive conduct and so should have reasonably foreseen the outcome of his participation.
 
 
 40
 The claim under Count II that Plaintiff suffered an unreasonable seizure at the hands of Carrillo and Messimer is dismissed.
 
 
 41
 B. Count I: Failure to Adequately Train or Supervise
 
 
 42
 Plaintiff requests the court to infer a failure to adequately train or supervise Carrillo and Messimer from the allegation that they permitted him to enter his bathroom alone and to close the door. Plaintiff alleges that the risk or necessity of having to use deadly force in such circumstances should be obvious to adequately trained or supervised police officers. He contends that Carrillo's use of deadly force violated his right to due process and "provoked the subsequent gun battle." (Complaint at pt. C(1)(A)(2).) In his response to the City defendants' motion, Plaintiff supplements his claim of failure to supervise and train with a claim of municipal policy of wrongful hiring policies. He alleges that during the time that Carrillo became a police officer, the City failed to utilize a screening examination that would eliminate about 25 per cent of all police officer candidates as a result of propensity for violence.
 
 
 43
 Because Plaintiff has failed to state a claim for a constitutional violation arising from the use of force during his arrest, I need not address his claims against the City defendants in their official capacity. Absent an underlying constitutional violation by a police officer, there can be no action against the municipality or the officer's supervisors for failing to train or supervise the officer. Apodaca v. Rio Arriba County Sheriff's Dept., 905 F.2d 1445, 1447 (10th Cir.1990) ( citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)).
 
 
 44
 Construing Plaintiff's complaint as alleging suit against the City defendants in their individual capacities, he still would fail to state a claim for failure to train or supervise. A supervisor or municipality may be held liable for a claim of excessive force "where there is essentially a complete failure to train," or training that is so objectively unreasonable "that future misconduct is almost inevitable." Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir.1988).
 
 
 45
 Plaintiff alleges publicity of claims of APD officer misconduct to support an inference that the City was put on notice of prior misbehavior and the need for corrective action. Plaintiff fails, however, to allege any fact that would support a conclusion that the City was on notice that Carrillo and Messimer, or any other police officers, were inadequately trained on the matter of permitting an arrest subject to be alone. Neither does he allege evidence of prior problems with these particular officers. Cf., McClelland v. Facteau, 610 F.2d 693, 697 (10th Cir.1979) (reversing summary judgment where supervisors were on notice that police officer in question was party in two other law suits involving the deaths of prisoners and where publicity of police misconduct was widespread). He further alleges that the City defendants "learned within hours," (Complaint at pt. C(1)(A)(2),) of Carrillo's and Messimer's actions, and were then on notice of the deficiencies in training and supervision. The City defendants can only be held liable if they had prior knowledge indicating that "future misconduct" was virtually unavoidable, see Meade v. Grubbs, 841 F.2d at 1528 (emphasis added), and where the manifest inadequacy of training is "so likely to result in the violation of constitutional rights, that the policymakers of the City can reasonably be said to have been deliberately indifferent to the need." See Canton v. Harris, 489 U.S. 378, 390 (1989) (emphasis added). The City's purported subsequent acquiescence in allegedly wrongful conduct cannot be used to infer, retroactively, a claim for insufficient training or supervision.
 
 
 46
 Plaintiff failed to allege specific facts to identify a deficiency in the training program that actually caused the ultimate injury. Cf., id. at 391. The ruling in Canton dictates that if Plaintiff successfully identified an express defect in the officers' training and then demonstrated that the specified training deficiency is closely related to the ultimate injury, he must still offer facts to support a determination that the failure to train "reflects deliberate indifference to the rights" of the City's inhabitants. Id., 489 U.S. at 392. I conclude that Plaintiff has not alleged sufficient facts that will support a conclusion that the City defendants, in their individual capacity, are liable for a failure to train or supervise that amounts to deliberate indifference to the rights of Albuquerque residents to be free from excessive force.
 
 
 47
 As to Plaintiff's contentions with regard to the hiring and screening practices, he fails to allege any facts that would support a conclusion that Carrillo's act in permitting him to be alone in his bathroom would have been predicted by the examinations the City failed to administer. Neither does he allege that Carrillo's actions in any way demonstrated a propensity for violence that would have been identified if the City had used the screening mechanism Plaintiff propounds. Before a supervisor or a municipality may be held liable for the acts of a subordinate, the plaintiff must allege an "affirmative link" between the incident of police misconduct and the municipality's deliberate indifference to the need to prevent that misconduct. See, e.g., D.T. by M.T. v. Independent School District No. 16, 894 F.2d 1176, 1187 (10th Cir.) cert. denied, --- U.S. ----, 111 S.Ct. 213 (1990) ( quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)). Plaintiff has failed to make factual averments sufficient to demonstrate, if proved, such a link. Defendants' motion to dismiss Count I for failure to state a claim is granted.
 
 
 48
 C. Count III: Improper Search and Questioning after Request for Counsel
 
 
 49
 Plaintiff alleges that, although he initially consented to a search of his house, he later revoked his consent by demanding the presence of his attorney and requesting a warrant before further questioning and searching. He alleges that the officers continued to search, question, and hover over him although he again demanded his attorney and twice attempted to telephone him. According to Plaintiff, the officers violated his Sixth Amendment rights by ignoring his demands for the presence of his attorney. Plaintiff further argues that Carrillo and Messimer violated his Fifth Amendment rights by interviewing him and recording him "without Miranda,"[1] (Complaint at pt. C(1)(C)(2),) and using the tape of the gun battle as evidence against him at trial. Plaintiff claims that Carrillo and Messimer denied him his right to be free from unreasonable searches of his home as guaranteed by the Fourth Amendment when they continued to search after he had revoked consent. Finally, Plaintiff contends that these offensive acts demonstrate the City defendants' failure to adequately train or supervise Carrillo and Messimer.
 
 1. Fourth Amendment claim
 
 50
 Plaintiff complains that Carrillo's and Messimer's continued search of his residence after he had revoked his consent violated his Fourth Amendment rights to be free from unreasonable searches. A Fourth Amendment violation occurs when police engage in a warrantless, non-consensual search and no exception to the warrant requirement applies. See, e.g., Specht v. Jensen, 832 F.2d 1516, 1522-23 (10th Cir.1987), reh'g en banc granted on other grounds, and judgment, but not opinion, vacated, 853 F.2d 805 (1988), cert. denied, 488 U.S. 1008 (1989). One exception to the warrant requirement is the existence of exigent circumstances which justify immediate police action. See, e.g., United States v. Smith, 797 F.2d 836, 840 (10th Cir.1986). For example, " '[t]he need to protect or preserve life or avoid serious injury is justification of what would be otherwise illegal absent an exigency or emergency.' " Mincey v. Arizona, 437 U.S. 385, 392-93 (1978) ( quoting Wayne v. United States, 318 F.2d 205, 212 (D.C.Cir.1963)). The compelling need for official action with no time to secure a warrant can justify departures from the warrant requirement. See Michigan v. Tyler, 436 U.S. 499, 511 (1978) (burning building presents exigency of sufficient proportions to render warrantless entry reasonable).
 
 
 51
 In his own complaint, Plaintiff alleges that Carrillo and Messimer responded to a telephone call which reported that he was beating a woman, and that while at the scene Carrillo received confirmation that the telephone call had come from Plaintiff's home. Plaintiff also acknowledges that he initially consented to a search in which Carrillo found evidence that a woman had been in the house. When the initial entry into a home is legitimate, a warrantless search may be justified by the exigencies inherent in the need to search for an injured person. United States v. Padilla, 819 F.2d 952, 961-62 (10th Cir.1987). "The Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid." United States v. Riccio, 726 F.2d 638, 643 (10th Cir.1984). Once inside legally, here with Plaintiff's consent, "the potential for danger justified a standard of less than probable cause for conducting a limited protective sweep." Maryland v. Buie, 494 U.S. 325, 334 n. 1 (1990).
 
 
 52
 In his response, Plaintiff argues that the exigent circumstances disappeared once the officers made the initial search. I am not persuaded. Plaintiff acknowledges that a woman in his home called for police assistance, claiming that she was being beaten. Carrillo's and Messimer's reliance on this anonymous tip, while perhaps insufficient standing alone to provide probable cause for a warrantless search, is a particularly appropriate consideration in situations of possible domestic violence. See Hopkins v. City of Sierra Vista, 931 F.2d 524, 529 n. 11 (9th Cir.1991). Here the officers' decision to search the house a second time, according to Plaintiff's own allegations of fact, was supported by confirmation from APD that the emergency call originated from Plaintiff's residence, as well as the evidence that a woman had recently been in the bedroom of the house.
 
 
 53
 Carrillo and Messimer were inarguably proceeding on more than "an inchoate and unparticularized suspicion or 'hunch.' " Maryland v. Buie, 494 U.S. at 332 (quoting Terry v. Ohio, 392 U.S. at 27). Moreover, the search was manifestly not motivated by an intent to arrest and seize evidence. See United States v. Smith, 797 F.2d at 840. Indeed, Plaintiff does not allege such an intent and further fails to allege that the officers found any evidence in the second search. Rather, Plaintiff contends that the tape recording of his subsequent behavior during the gun battle was evidence procured from an unlawful search. I find that the facts alleged by Plaintiff establish the reasonableness of the officers' suspicion that an injured person was hidden in the house. I further find that the existence of exigent circumstances justified the repeated search. Defendants' motion to dismiss is granted with respect to the Fourth Amendment claim alleged in Count III.
 
 2. Fifth Amendment claim
 
 54
 Defendants move to dismiss Plaintiff's claim under the Fifth Amendment for failure to state a claim. As support, Defendants offer Plaintiff's own allegation that Carrillo and Messimer permitted him to leave their presence and to be alone in his bathroom. Plaintiff fails to address Defendants' argument in his response.
 
 
 55
 When an accused in custody expresses the desire to deal with the police only through an attorney, no further interrogation is permissible until counsel has been made available, barring a valid waiver of the earlier request for the assistance of counsel. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). In such circumstances, an accused's request for an attorney is an invocation of his Fifth Amendment right to be free from compelled self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444, 472 (1966).
 
 
 56
 The rules of Edwards and Miranda only apply to the use of self-incriminating statements elicited in "an interrogation environment ... created for no purpose other than to subjugate the individual to the will of [the] examiner." Id., at 457. Cf., United States v. Rogers, 921 F.2d 975, 979 (10th Cir.1990) (post-conviction presentence interview not the type of inherently coercive situation and interrogation for which the Miranda rule was designed). A criminal defendant's right to counsel under Miranda is triggered only by a suspect invoking that right during custodial interrogation. Rhode Island v. Innis, 446 U.S. 291, 300-301 (1980); United States v. Abreu, 730 F.Supp. 1018, 1029 (D.Colo.1990), aff'd, 935 F.2d 1130 (10th Cir.), cert. denied, 112 U.S. 271 (1991). More to the point, the Miranda warnings are required only when an individual is in custody and subject to an interrogation. See, e.g., United States v. Gay, 774 F.2d 368, 379 (10th Cir.1985).
 
 
 57
 The threshold concern is whether Plaintiff was in custody. Roberts v. United States, 445 U.S. 552, 560-61 (1980). An individual, for Miranda purposes, is in custody when subject to "formal arrest or restraint in freedom of movement of the degree associated with a formal arrest." Minnesota v. Murphy, 465 U.S. 420, 430 (1984) (citations omitted). The second element necessary to trigger the Miranda requirements is an interrogation environment. The term "interrogation" refers to words or actions that the police "should know are reasonably likely to elicit an incriminating response." United States v. Gay, 774 F.2d at 379 ( citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). An on-the-scene inquiry to find out what has happened and whether a crime has occurred is not an interrogation requiring Miranda warnings. See, e.g., United States v. Scalf, 725 F.2d 1272, 1275-76 (10th Cir.1984) (citations omitted). "The need for answers in a situation posing a threat to public safety outweighs the need" for Miranda warnings aimed at protecting the Fifth Amendment right against self-incrimination. United States v. Padilla, 819 F.2d 952, 961 (10th Cir.1984) ( quoting New York v. Quarles, 467 U.S. 649, 657 (1984) (recognizing public safety exception to Miranda rule)).
 
 
 58
 Plaintiff's allegation, taken as true, that the officers continued searching and hovering over him simply does not rise to the level of an allegation of custodial interrogation. While he may have felt threatened sufficiently to transform an otherwise consensual interchange into a seizure triggering Fourth Amendment protections, (see Part II(A)(2), supra,) his allegations of fact do not justify a conclusion that he had been subject to a full-blown arrest necessitating the Miranda warnings prior to the gun battle. See Florida v. Royer, 460 U.S. 491, 517 n. 2 (1983) (Blackmun, J., dissenting). Furthermore, accepting Plaintiff's version of the facts, I find it unreasonable to conclude that Carrillo should have considered his interchange with the plaintiff to be an interrogation when that conclusion must be premised in a decision that Carrillo should have viewed his drawn gun as "reasonably likely to elicit" the "incriminating response" of Plaintiff pulling a gun and engaging in a shoot-out. See United States v. Gay, 774 F.2d at 379 (citations omitted). As to the taping of the gun battle, a person is not entitled to counsel while he is committing a crime. See, e.g., Noland v. United States, 380 F.2d 1016, 1017 (10th Cir.), cert. denied, 389 U.S. 945 (1967).
 
 
 59
 Applying the objective, reasonable person standard, see Berkemer v. McCarty, 468 U.S. 420, 442 (1984), to the facts alleged by Plaintiff, I find that he was not in custody at the time of the interchange and the taping. I further find that Carrillo's actions were not reasonably likely to elicit an incriminating response and so were not an interrogation; I likewise judge these facts by an objective standard. See United States v. Gay, 774 F.2d at 379 n. 22. As he was not subject to a custodial interrogation, I find that Carrillo and Messimer did not violate his rights by their purported failure to apprise him of his rights under Miranda, by their continued interaction after he requested access to his attorney, or by their taping of his remarks or behavior. Defendants' motion to dismiss is granted with respect to the Fifth Amendment claim alleged in Count III.
 
 3. Sixth Amendment claim
 
 60
 Defendants move the court to dismiss Plaintiff's claim under the Sixth Amendment, essentially reiterating their argument that Plaintiff was not in custody at the time in question. Plaintiff does not address the challenge to his Sixth Amendment claim in his response to Defendants' motion.
 
 
 61
 The Sixth Amendment right to the assistance of counsel in criminal prosecutions does not attach until a prosecution is commenced with "the initiation of adversary judicial criminal proceedings," for example, by way of indictment or preliminary hearing. See, e.g., United States v. Gouveia, 467 U.S. 180, 187-88 (1984) ( quoting Kirby v. Illinois, 406 U.S. 682, 688-89 (1972)). Accepting Plaintiff's recitation of facts as true, he had not even been arrested at the time of the incident in question. Because Plaintiff had not been arrested when the recorded interaction occurred, his Sixth Amendment right to counsel was not implicated. See, e.g., Abreu, 730 F.Supp. at 1029. I find that, as he was neither accused as yet of any crime nor the subject of criminal prosecution, Plaintiff's Sixth Amendment rights had not attached at the time he indicated his desire to contact counsel. Defendants' motion to dismiss is granted with respect to the Sixth Amendment claim in Count III.
 
 4. Failure to train or supervise
 
 62
 Because Plaintiff has failed to state claims for constitutional violations in Count III, the City defendants cannot constitutional violations in Count III, the City defendants cannot be found liable in their official capacity for any alleged failure to train or supervise in the areas of conduct challenged in Count III. Neither has Plaintiff stated a claim against them in their individual capacities. See discussion in Part II(B), supra.
 
 III. CONCLUSION
 
 63
 Plaintiff has failed to state a claim cognizable under Section 1983 for the violation of his civil rights. His complaint will be dismissed on all counts. Because of the dispositive nature of this ruling, I do not address Carillo's pending motions for substitution of parties and for dismissal.
 
 WHEREFORE
 
 64
 IT IS ORDERED that Plaintiff's complaint is dismissed, with prejudice, in its entirety.
 
 
 65
 /s/ Signature illegable
 
 Senior United States District Judge
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 In order to give the reader the flavor of this complaint, Mr. Chamberlain complains, inter alia, that one of the two officers was not wearing a bullet-proof vest and the City ratified the police conduct by naming a new city park after the slain officer
 
 
 [2]
 Plaintiff does not appeal the dismissal of his Sixth Amendment claim
 
 
 [1]
 Plaintiff presumably references the prophylactic rights, including the right to have counsel present, established in Miranda v. Arizona, 384 U.S. 436 (1966) which were designed to counteract the "inherently compelling pressures" of custodial interrogation. Id. at 467